58 Cal.Rptr.3d 692 (2007)
150 Cal.App.4th 735
The PEOPLE, Plaintiff and Respondent,
v.
Henry O. REYES, Defendant and Appellant.
No. B185929.
Court of Appeal of California, Second District, Division Seven.
May 9, 2007.
Certified For Partial Publication.[*]
*693 Joanna McKim, San Diego, under appointment by the Court of Appeal, for Defendant and Appellant.
Bill Lockyer, Attorney General, Mary Jo Graves, Chief Assistant Attorney General, Pamela C. Hamanaka, Senior Assistant Attorney General, Mary Sanchez, Lawrence M. Daniels and Rama R. Maline, Deputy Attorneys General, for Plaintiff and Respondent.
WOODS, J.

SUMMARY
Henry Reyes was convicted of two counts of first degree burglary with a person present, one count of forcible oral copulation and two counts of forcible rape, with special allegations that he had committed the sexual assaults during the commission of a burglary with the intent to commit one of these sex crimes found true. The trial court sentenced Reyes to a term of 47 years to life in state prison. He appeals, claiming error in the trial court's denial of his motion to sever and admission of photographs of his tattoos, prosecutorial misconduct, insufficiency of the evidence and sentencing error. We affirm and publish the portion of this opinion (see section V., post) addressing Reyes's claim of error under Cunningham v. California (2007) 549 U.S. ___, 127 S.Ct. 856, 166 L.Ed.2d 856.

FACTUAL AND PROCEDURAL SYNOPSIS[**]

DISCUSSION
I.-IV.[**]

V. Reyes Has Failed to Demonstrate Prejudicial Sentencing Error under Cunningham v. California (2007) 549 U.S. ___ [127 S.Ct. 856].
Finding that the victims were particularly vulnerable; the violence as to counts 2 through 4 was extreme; Reyes had two prior prison terms; he was on parole when he committed the crimes for which he was to be sentenced and his prior performance on parole and probation was unsatisfactory (Cal. Rules of Court, rule 4.421), the trial court imposed upper term sentences on counts 2 (forcible oral copulation), 3 (forcible rape) and 5 (first degree burglary).[7] According to Reyes, the trial court's imposition of these upper term sentences violated his constitutional rights to a jury trial and due process. We disagree.
In People v. Black (2005) 35 Cal.4th 1238, 1244, 29 Cal.Rptr.3d 740, 113 P.3d 534, our Supreme Court determined that "the judicial factfinding that occurs when a judge exercises discretion to impose an upper term sentence or consecutive terms under California law does not implicate a defendant's Sixth Amendment right to a jury trial." However, after briefing was completed in this case, the United States Supreme Court held in Cunningham v. California (2007) 549 U.S. ___, 127 S.Ct. at p. 860 that, California's determinate sentencing law, "by placing sentence-elevating factfinding within the judge's province, violates a defendant's right to trial by jury safeguarded by the Sixth and Fourteenth Amendments."
*694 Nevertheless, the Cunningham court reaffirmed the rules that apply in this case. "Other than a prior conviction, see Almendarez-Torres v. United States [(1998) 523 U.S. 224, 239-247, 118 S.Ct. 1219, 140 L.Ed.2d 350], we held in Apprendi [v. New Jersey (2000) 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435], "`any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" (Cunningham, supra, 549 U.S. ___ [127 S.Ct. at p. 864], italics added.) "`Our precedents make clear ... that the "statutory maximum" for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.... In other words, the relevant statutory "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings.'" (Cunningham, supra, 549 U.S. ___ [127 S.Ct. at p. 865], quoting Blakely v. Washington (2004) 542 U.S. 296, 303, 124 S.Ct. 2531, 159 L.Ed.2d 403, original italics.)
Leaving to one side the People's waiver argument (Reyes's sentencing hearing took place two months after our Supreme Court's decision in Black so it was controlling authority at the time), Reyes had at least three prior convictions.[8] In fact, as the trial court noted, Reyes admitted multiple prior convictions on the stand. Moreover, Reyes further admitted at trial he had been in prison and had just been released at the time these crimes were committed.[9] The existence of a single aggravating circumstance is sufficient to support the imposition of an upper term. (Pen.Code, § 1170, subd. (b); and see People v. Osband (1996) 13 Cal.4th 622, 728, 55 Cal.Rptr.2d 26, 919 P.2d 640.) Each of Reyes's prior convictions (as well as each of his admissions) was sufficient to satisfy the statutory requirement, making the upper term the statutory maximum for his offenses. (See People v. Black, supra, 35 Cal.4th at pp. 1269-1270, 29 Cal.Rptr.3d 740, 113 P.3d 534 (cone. & dis. opn. of Kennard, J.).) It follows that no Sixth Amendment violation occurred in this case. On this record, "without any additional findings," (Cunningham, supra, 549 U.S. ___ [127 S.Ct. at p. 865], original italics), the trial court was authorized to impose the upper term sentences. (Blakely v. Washington, supra, 542 U.S. at p. 303, 124 S.Ct. 2531; and see People v. Black, supra, 35 Cal.4th at p. 1270, 29 Cal.Rptr.3d 740, 113 P.3d 534 (cone. & dis. opn. of Kennard, J.) ["Once the upper term became the statutory maximum in this manner, defendant's right to jury trial under the federal Constitution's Sixth Amendment was satisfied, and the trial court on its own properly couldand didmake additional findings of ... aggravating circumstances in support of its discretionary sentence choice to impose the upper term"].) Once the upper term became the statutory maximum in this case, the trial court properly made its own additional findings regarding aggravating circumstances not submitted to the jury in support of its discretionary sentencing decision. Standing alone, however, each of Reyes's multiple prior convictions as well as each of his admissions was sufficient to authorize the trial court to impose the upper term sentences as it did.

*695 DISPOSITION

The judgment is affirmed.
I concur: PERLUSS, P.J.
JOHNSON, J., Concurring and Dissenting.
I concur in the judgment and rationale of my colleagues' opinion affirming appellant's convictions. I respectfully dissent, however, from that portion of the opinion affirming the sentence despite what I perceive to be Apprendi-Blakely-Cunningham error[1] which cannot be deemed harmless and requires remand to the trial court.
It is true appellant had two prior felony convictions for transporting, selling or giving away drugs (in violation of Health and Safety Code section 11352) and another conviction [evidently reduced to a misdemeanor] under the Vehicle Code for vehicle theft (in violation of section 10851). It also is true, as the majority opinion emphasizes, the trial court mentioned those prior non-violent, not very serious convictions in the course of discussing why it was imposing the high terms on counts 2, 4 and 5. In my view, however, the majority opinion allows those convictions to justify high term sentences on three of appellant's offenses despite the fact most of the court's explanation for imposing those sentences revolved around aggravating factors not found by the jury about the circumstances and nature of the offenses appellant committed.
The trial court found the count 1-4 offenses involved a "high degree of cruelty, viciousness and callousness." Second, both victims were "particularly vulnerable in view of the fact they were defenseless in their own homes and unaware of the attack until it occurred." Third, the "violence that was used in the rape and oral copulation (counts 2 and 4) was extreme to the extent that the bruising on the victim was visible thereafter."
Then after mentioning the two prior prison terms and poor performance on probation and parole, the trial judge explained why he was giving the high term on count 5 which he found did not involve the high degree of cruelty, etc., nor violence. "The high term is selected in part in addition to the reasons that I've indicated that it wasn't simply a burglary but a terrorizing situation for the victim who was known to be in the premises at the time the defendant came in through the window and chased her out the front door."
As to counts 2 and 3, the trial court found they "were separate and apart from each other ... and for that reason I would select the high term of eight years because of the extreme violence that was used in committing both of those offenses and for the reasons that have been outlined earlier. The high term of eight years for each, and they're consecutive to each other and consecutive to count 5, which is the primary term."
The trial judge then summed up the total sentence and why he was imposing such a lengthy term, highlighting still more facts he rather than the jury found about the commission of the crimes. "The total term, effective term is 47 years to life. I've seldom seen a case that involved so much violence, and the concern that I had was the defendant was, as to counts 1 through 4, rejected from the premises twice, came back a third time and insisted on satisfying himself at the expense of the victim."
*696 On this record, it seems unlikely this trial judge would have imposed the high terms or even the discretionary consecutive sentences on all three of these counts based solely on appellant's two prior prison terms for non-violent, not very serious felonies and poor performance on probation and parole. Rather, the transcript fairly oozes outrage about facts the judge rather than the jury foundappellant's "extreme violence," "terrorizing the victim," "cruelty, viciousness, and callousness" toward "particularly vulnerable victims" while "satisfying himself at the expense of the victim." All of this the judge summed up in his final justification for such a harsh sentence. "I've seldom seen a case that involved so much violence."
For purposes of this dissent, I accept the test the California Supreme Court announced in People v. Avalos.[2] That is, in reviewing a sentence based on both proper and improper aggravating factors we "must ... reverse where [we] cannot determine whether the improper factor was determinative for the sentencing court."[3] It is not what could have been determinative if the trial court had known some of the factors it used would turn out to have been improper. Rather, it is what the sentencing court did use that "was determinative" in fixing the sentence the trial court actually meted out.
The majority cites a passage from the Supreme Court's opinion in People v. Osband[4] to the effect "[o]nly a single aggravating factor is required to impose the upper term."[5] But this pre-Apprendi case has little relevance to the case before this court. After upholding the death sentence Osband received for a rape-murder, the court turned to the determinate prison sentences the trial court imposed for other offenses occurring during the crime. Finding the trial court violated the "dual use" prohibition by using one of the aggravating factors to both make the sentences consecutive and to impose the high term on one of those offenses, the court had to decide whether the high term could be affirmed on the basis of other aggravating factors. "`Improper dual use of the same fact for imposition of both an upper term and a consecutive term or other enhancement does not necessitate resentencing if "[i]t is not reasonably probable that a more favorable sentence would have been imposed in the absence of the error." [Citation.].... In this case, the court could have selected disparate facts from among those it recited to justify the imposition of both a consecutive sentence and the upper term, and on this record we discern no reasonable probability that it would not have done so.'"[6]
Osband and its statement saying a single aggravating factor will suffice is readily distinguishable. In that case, only Watson error was involveddual use of an aggravating factor in violation of a statutory prohibition. Thus, the reviewing court only remands for resentencing if it finds a "reasonable probability" the trial court would not have imposed the high term had the improper factor been unavailable. *697 Furthermore, in Osband only one of several strong aggravating factors had been found improper. It was as if in the case before this court somehow only the trial court's finding of victim vulnerability had violated Cunningham and its predecessors, with any of the several other aggravating factors relating to violence, and cruelty, and viciousness the trial court stressed had remained available to upgrade the sentences on all three offenses. While it is true even a single legitimate aggravating factor can support an upper term, that is true only if the trial court indeed found that single legitimate factor sufficient by itself to impose the upper term sentence it didor definitely would have if it were the only aggravating factor in the case. The mere presence of a legitimate aggravating factor does not justify upholding an upper term sentence.
In the case before this court, in contrast to Osband, the factors the trial court rather than the jury found to be true were not just improper, but constitutionally improper. Consequently, the Chapman standard[7] applies and we must remand for resentencing unless we can determine beyond a, reasonable doubt the improper factor or factors were not determinative in the sense of tipping the scale toward the upper term. For reasons explained above, not only do I entertain a reasonable doubt but believe it is almost certain this trial judge imposed the high term on these three counts and used his discretion to make the sentences consecutive to each other primarily because of the facts he, not the jury, found about the circumstances of these crimes. It appears unlikely the two non-violent, non-serious prior convictions alone were determinative in elevating the penalty to the high term on not just one or two, but all three of these counts,
The majority suggests the presence of any prior conviction in a defendant's past effectively negates Apprendi-Blakely-Cunningham. As long as the trial court mentioned the conviction in the process of sentencing the defendant to one or more upper terms, according to this view, the aggravation of the sentence is "authorized" within the meaning of Cunningham and its predecessors. Furthermore, because the high term was "authorized" by the presence of a prior (even though that prior may not have been determinative in the trial court's imposition of the high term) the trial court was free to itself find and use other aggravating factors the jury otherwise would be required to find in making the court's decision whether or not in fact to elevate the sentence from the mid-term to the high term. (Maj. Opn. at p. 694.)
According to this line of reasoning, a conviction the trial court did not consider serious enough by itself to warrant an upper term nonetheless trumps Cunningham and its predecessors. The mere presence of that prior conviction in a defendant's record permits a trial judge rather than the jury to find the factors the court deems the true reason for raising the sentence beyond that permitted by the findings the jury made. The result? Apprendi-Blakely-Cunningham would only apply when trial courts are sentencing defendants who have no prior convictions. Even a single prior conviction, or a single juvenile adjudication many years in the past would be enough to disable the requirement aggravating factors be decided by a jury not the sentencing judge.
The majority opinion finds support for this rationale in a concurring and dissenting opinion found in the California Supreme Court's decision, People v. Black[8] *698 an opinion the U.S. Supreme Court returned to our high court along with the entire decision in that case.[9] In my view, this position represents the sort of narrow reading of Apprendi which would force the U.S. Supreme Court to once again emphasize it meant what it said in that opinion, as it did in Blakely and now in Cunningham. I find nothing in Apprendi Blakely or Cunningham to suggest the requirement of jury findings as to aggravating factors other than prior convictions is disabled in any and all cases where the defendant had a prior conviction. Yes, a prior conviction can be used to elevate a sentence without a jury finding. Yes, a trial judge can use a prior conviction alone as the sole grounds for elevating a sentence at least when that is appropriate. But this does not mean the prior conviction can serve as a smokescreen behind which the trial judge in fact employs other factors as the true reasons for determining the higher term is warranted.
Perhaps it will be helpful to clarify the limited point of this dissent in the context of the case before this court. I am not saying remand would necessarily be required had the trial judge expressly said he would elevate the sentence on all three counts to the upper term based solely on the two prior convictions, even though they were non-violent, non-serious offenses. (Such a statement would compel a reviewing court to determine whether this represented an abuse of discretion, however, something I need not address here.) Had the judge made this clear during the sentfencing hearing, reversal might not be required even though he had gone on to say he also found the other aggravating factors to be enough by themselves to impose the high term.
But the trial judge here did something entirely different. He mentioned the prior convictions and other behavior related to those convictions that arguably do not require jury findings,[10] but did so in the midst of a vigorous rendering of the several factors which do require the jury rather than the judge to decide whether they are true. From the trial judge's discussion of sentencing factors it is impossible to conclude beyond a reasonable doubt he did find the two prior drug convictions sufficient by themselves to elevate the sentence on any or all three counts to the upper term. It is not even possible to conclude beyond a reasonable doubt he would have done so had he known the other factors were not available for that purpose. It is conceivable a reviewing court could make such a finding had appellant had a lengthy history of past felony convictions involving assaultive behavior or sex offenses, for instance, another issue not before this panel. But by themselves, because of their nature it cannot be said beyond a reasonable doubt appellant's two drug priors alone would have led the trial judge to raise all three counts to the high term.
Nor is this a case where it is possible, to conclude beyond a reasonable doubt a jury necessarily would have found defendant guilty beyond a reasonable doubt of the *699 aggravating circumstances the trial court recited as reasons for upgrading the punishment. Was this rape truly far more violent, cruel, etc., than the average rape? Were the two victims unusually vulnerable compared to other rape victims? The trial judge said he found them so, but this particular judge had some basis of comparison after more than a quarter century of experience sitting primarily in criminal courts. Jurors lacking exposure to other rape convictions would have a difficult time making those same comparative assessments.
True, I would have little trouble finding substantial evidence sufficient to affirm a jury finding this rape was particularly violent, cruel, etc. and the victims especially vulnerable. Yet, despite the trial judge's characterization of this as the most violent rape he had seen, based on the scores of other rapes this court has reviewed during the past quarter centurymany of them involving far more violence and cruelty and more vulnerable victims than this caseI cannot find beyond a reasonable doubt such a verdict would have been inevitable even had it been feasible to submit these factors to a jury.
I note a very recent decision from the Fourth District, People v. Banks,[11] supports the view expressed in this dissent. Writing for a unanimous court, Acting Presiding Justice Rylaarsdam reversed an upper term sentence and remanded "with directions to conduct a new sentencing hearing consistent with the views expressed in this opinion."[12] In Banks, the defendant received a six year sentence after a jury convicted him of two counts of second degree robbery, one count of commercial burglary, and two counts of false imprisonment by violence. Five years of that sentence, however, consisted of an upper term imposed on one of the burglary counts. That upper term, in turn, was based on the several aggravating factors "defendant's `leadership role' in the undertaking, which involved `some planning and sophistication,' `a high degree of cruelty,' . . . defendant's use of `at least [the] replica' of a gun .... land defendant's] `well documented' `priors and the fact' he `ha[d] not been doing well on probation or parole.'"
After explaining jury findings were not required for the prior conviction factors (and taking the position the poor performance on parole and probation factor fell in that category, too) the Banks court nonetheless found it necessary to remand to the trial court for a new sentencing hearing. "A trial court may impose an upper term sentence based on a single aggravating factor" citing People v. Osband, supra]. But unlike Perez,[13] the trial court in this case cited several additional factors to support its choice of the upper term on count 1, and also did not declare defendant's prior criminal record alone would support its decision. "Since we are not convinced the trial court would have imposed the same sentence solely because of defendant's prior criminal history, we remand for resentencing."[14]
Accordingly, if in the majority, as the Fourth District did in Banks, I would remand for resentencing. At that hearing, without any further findings, the trial court could impose the mid-term on any or all of the three offenses on which it previously imposed the high term.[15] As to any *700 of the three offenses on which it proposes to impose the high term once again, however, the trial court would be required to ignore the factors it improperly found true and determine whether it would still elevate the sentence to the high term as to that offense based solely on (1) the elements of the offense charged and found true beyond a reasonable doubt by the jury, and (2) appellant's prior felony drug convictions for which no jury finding is required. That is, the trial court would have to find these particular prior convictions were such it would raise the period of imprisonment to the high term in the "average" case involving both rape and forced oral copulation without regard to the violence, cruelty, vulnerable victims, and other characteristics it and not the jury found to have been present in this particular crime.
NOTES
[*] Pursuant to California Rules of Court, rules 8.1100 and 8.1110, only the Summary, part V of the Discussion, the Disposition, and the Concurring and Dissenting opinion are certified for publication.
[**] See footnote *, ante.
[7] Here, there were no mitigating factors.
[8] Reyes had two prior convictions for sales of a controlled substance in addition to a prior conviction for taking or driving a vehicle without the owner's consent. (He also admitted another conviction for stealing clothing.)
[9] As the trial court observed, Reyes had been out of state prison for only 13 days and was on parole at the time of these crimes.
[1] Apprendi v. New Jersey (2000) 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435; Blakely v. Washington (2004) 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403; Cunningham v. California (2007) 549 U.S. ___ [127 S.Ct. 856, 166 L.Ed.2d 856].
[2] People v. Avalos (1984) 37 Cal.3d 216, 207 Cal.Rptr. 549, 689 P.2d 121.
[3] People v. Avalos, supra, 37 Cal.3d at page 233, 207 Cal.Rptr. 549, 689 P.2d 121, italics added.
[4] People v. Osband (1996) 13 Cal.4th 622, 55 Cal.Rptr.2d 26, 919 P.2d 640, upholding the death penalty as well as upper term and consecutive sentences for related crimes in a rape-murder case.
[5] People v. Osband, supra, 13 Cal.4th at page 728, 55 Cal.Rptr.2d 26, 919 P.2d 640.
[6] People v. Osband, supra, 13 Cal.4th at pages 728-729, 55 Cal.Rptr.2d 26, 919 P.2d 640, italics added.
[7] Chapman v. California (1967) 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705.
[8] People v. Black (2005) 35 Cal.4th 1238, 1264-1273, 29 Cal.Rptr.3d 740, 113 P.3d 534 (cone. & dis. opn. of Kennard J.). This opinion in fact identifies two permissible aggravating factors: the defendant's "criminal history" which Justice Kennard argued required no jury finding; and another factor related to the crime which the jury had found true in determining the defendant was ineligible for parole. So this dissenting opinion does not present squarely the issue whether defendant's past criminal history by itself necessarily "authorizes" a high term sentence.
[9] Certiorari granted and judgment vacated by Black v. California, ___ U.S. ___, 127 S.Ct. 1210, 167 L.Ed.2d 36 (2007).
[10] Once again, although entertaining some doubts, I find it unnecessary to discuss whether appellant's behavior on parole and probation, etc. are so closely related to the prior convictions as to evade the jury finding requirement of Apprendi-Blakely-Cunningham.
[11] People v. Banks (2007) 149 Cal.App.4th 969, 57 Cal.Rptr.3d 483.
[12] Banks, supra, 149 Cal.App.4th at 974, 57 Cal.Rptr.3d 483.
[13] People v. Perez (2007) 148 Cal.App.4th 353, 55 Cal.Rptr.3d 683.
[14] People r. Banks, supra, 149 Cal.App.4th at 974, 57 Cal.Rptr.3d 483.
[15] I note the sentence would still be lengthy even if the trial court only assessed the midterm or each of the three counts on which the judge raised the sentence to the high term. Instead of 47 years to life appellant would face a sentence of 41 years to life. Of course, the decision to impose consecutive sentences rather than concurrent sentences had a greater impact on the minimum period of imprisonment than the decision to impose the high terms on the three countsadding as much as 11 years to the determinant element of appellant's life sentence.