[No. B171476. Second Dist., Div. Seven. July 6, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
CESAR VELASQUEZ, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of parts 1, 2, 4, 5 and 6 of Discussion.

1504

**COUNSEL**

Alan Siraco, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Dane R. Gillette and Robert R. Anderson, Chief Assistant Attorneys General, Pamela C. Hamanaka, Assistant Attorney General, Marc E. Tuchin, Lawrence M. Daniels, David A. Wildman and Donald E. de Nicola, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**PERLUSS, P. J.**—Cesar Velasquez appeals from the judgment entered after a jury convicted him of 10 offenses ranging from petty theft to attempted murder that was willful, deliberate and premeditated. In our original nonpublished opinion, filed February 16, 2005, we affirmed Velasquez's convictions on all counts but reversed the sentence imposed on count 3 for assault with a firearm and the enhancement related to that count and remanded for resentencing consistent with our understanding of the constitutional requirements for trial by jury articulated in *Blakely v. Washington* (2004) 542 U.S. 296 [159 L.Ed.2d 403, 124 S.Ct. 2531] (*Blakely*). We also directed the trial court on remand to strike the firearm enhancements under Penal Code section 12021.5, subdivision (a),[1] imposed on counts 5, 10 and 12.

On June 8, 2005 the California Supreme Court granted the People's petition for review (S132402, petn. for review filed Mar. 21, 2005) and deferred further action in the matter pending consideration and disposition of a related issue in *People v. Black* (2005) 35 Cal.4th 1238 [29 Cal.Rptr.3d 740, 113 P.3d 534] (*Black*) and *People v. Towne*, review granted July 14, 2004, S125677. On September 7, 2005 the Supreme Court transferred the matter to this court pursuant to California Rules of Court, former rule 29.3(d) (now rule 8.528(d)) with directions to vacate our prior decision and to reconsider the cause in light of *Black*. Accordingly, on October 18, 2005, we filed a new opinion in which we modified Velasquez's sentence by striking the firearm enhancements under section 12021.5, subdivision (a), imposed on counts 5, 10 and 12 and, as modified, affirmed the judgment.

On February 20, 2007 the United States Supreme Court, after granting Velasquez's petition for writ of certiorari, vacated the judgment and remanded the matter to us for further consideration in light of *Cunningham v. California* (2007) 549 U.S. 270 [166 L.Ed.2d 856, 127 S.Ct. 856] (*Cunningham*). We requested and received supplemental briefing from the parties on the effect, if any, of *Cunningham* on Velasquez's sentence. Although for reasons somewhat different from those contained in our October 18, 2005 opinion, we again conclude that imposition of the upper term sentence on count 3 for assault with a firearm and the enhancement related to that count did not violate Velasquez's Sixth Amendment right to a jury trial. Accordingly, we modify Velasquez's sentence by striking the firearm enhancements under section 12021.5, subdivision (a), imposed on counts 5, 10 and 12 and, as modified, affirm the judgment.[2]

---

[1] Statutory references are to the Penal Code unless otherwise indicated.

[2] Except for our discussion of the constitutionality of the trial court's imposition of the upper term sentence on count 3 and the related enhancement, the opinion we now file is substantially the same as our nonpublished opinion of October 18, 2005.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Charges*

Velasquez was charged with multiple crimes arising from his participation in four separate incidents: (1) two counts of attempted second degree robbery (§§ 211, 664) (counts 1 and 2); (2) two counts of assault with a firearm (§ 245, subd. (a)(2)) (counts 3 and 4); (3) two counts of possession of a short-barreled shotgun (§ 12020, subd. (a)) (counts 5 and 6); (4) three counts of possession of a firearm by a felon (§ 12021, subd. (a)(1)) (counts 7, 8 and 12); (5) attempted murder that was willful, deliberate and premeditated (§§ 187, subd. (a), 664, subd. (a)) (count 9); (6) second degree robbery (§ 211) (count 10); and (7) petty theft (§ 484, subd. (a)) (count 11). The information specially alleged firearm enhancements as to counts 1, 2, 3 and 9 and in addition a great-bodily-injury enhancement as to count 9. As to all counts except the petty theft charge in count 11, the information specially alleged the offenses were committed for the benefit of, at the direction of and in association with a criminal street gang (§ 186.22, subd. (b)(1)). As to counts 7, 8 and 12 the information specially alleged Velasquez carried a firearm on his person during the commission of a street gang crime (§ 12021.5, subd. (a)).

### 2. *Summary of the Evidence at Trial*

#### a. *Petty theft (count 11)*

On or about August 20, 2002 Velasquez, a member of the 18th Street gang, and some of his fellow gang members were at Thudo Billiards on West Sixth Street in Los Angeles, territory claimed by the 18th Street gang. Velasquez was caught on videotape taking something from the cash register drawer at the pool hall while the manager, Chuc Tran, was distracted by one of Velasquez's associates. Tran discovered between $60 and $70 missing from the drawer. Tran identified Velasquez from a photographic lineup as the person who had removed something from the register.

#### b. *Robbery (count 10)*

A few weeks later, on or about September 13, 2002, Velasquez was shooting pool at Thudo Billiards when Tran requested he come to the counter and pay for his table time. In response Velasquez grabbed Tran by the shirt and punched him in the face. Velasquez then took money from the cash register and asked Tran where he kept additional money. After Tran showed Velasquez that he hid money in a refrigerator in the back of the pool hall, Velasquez took that money as well. Velasquez took a total of approximately $200.

#### c. Attempted murder (count 9); firearm possession by a felon (count 12)

Concerned about these episodes, Tran hired Hazeem Ismail to work as a security guard. Velasquez approached Ismail on his second day of work, September 29, 2002, and asked if Ismail was a police officer. Ismail responded, "I am not a police officer. I am security for this area." Velasquez then said, "I am a gang member. Watch out." Later that evening Tran went to the table where Velasquez and his friends were shooting pool and asked them to pay for their beer and table time. Tran was ignored. Ismail then asked for payment, but Velasquez and his friends refused. Tran and Ismail then went to the table together to ask for payment. Velasquez told Tran to leave him alone and said he would pay later. Tran became angry, threw a pool cue and told Velasquez and his friends to either pay or leave.

Tran and Ismail then went back to the counter, and Ismail called his supervisor at the security company. One of Velasquez's friends asked Ismail if he was calling the police. Ismail responded, "Yes I am talking to my manager." Suddenly, Ismail saw Velasquez coming toward him and heard someone yell, "Shoot him. Shoot him." Velasquez shot Ismail several times from approximately nine feet away, wounding him in the stomach, thigh, arm and finger. The bullets lacerated Ismail's liver and a major vein in his intestine and shattered one of his kidneys. Ismail identified Velasquez in a photographic lineup as the person who had shot him.

#### d. Attempted second degree robbery (counts 1 and 2); assault with a firearm (counts 3 and 4); possession of a short-barreled shotgun (counts 5 and 6); firearm possession by a felon (counts 7 and 8)

Several months later, on or about January 3, 2003, Velasquez and two other men entered Read's Liquor on Alvarado Street in Los Angeles, also 18th Street gang territory. One of the men pointed a gun at Meeja Ahn, one of the store's owners. The man said, "Give me the money," and motioned toward the cash register with the gun. In the meantime Velasquez went behind the counter with a shotgun and pointed it at Yho Ahn, Meeja Ahn's husband and co-owner of the store. Yho Ahn grabbed his own gun from under the counter and shot Velasquez, wounding him in the head. Velasquez and the two other men fled on foot.

When police arrived at the scene, they followed a trail of blood beginning behind the counter of the liquor store that led them to Velasquez, who was sitting on the curb in front of his apartment building less than a block away. Velasquez had suffered a gunshot wound to his head. The police arrested

Velasquez and transported him to a hospital. Velasquez told a detective he had just been injured in a driveby, gang-related shooting while standing in front of his apartment building. Velasquez, however, immediately changed his story, telling the detective he had gone to Read's Liquor to buy beer and had been mistakenly shot by the owner when two other men wearing masks tried to rob the store. A shotgun was found in Velasquez's apartment.

The parties stipulated Velasquez had previously been convicted of a felony.

### e. *Expert testimony on gang activity*

In addition to evidence of the substantive offenses, Los Angeles Police Department Officer Jonathan Pultz testified as an expert on the 18th Street gang. According to Officer Pultz, the primary activities of the 18th Street gang, one of the largest in the nation with more than 30,000 members, are robbery, murder, carjacking, burglary, extortion and narcotics sales. Gang members are identifiable by hand signs, symbols and tattoos. Within two years prior to the crimes charged against Velasquez, 18th Street gang members had been convicted of attempted robbery and assault with a deadly weapon. Velasquez had 18th Street gang paraphernalia in his apartment when he was arrested and 18th Street gang tattoos on his body.

Officer Pultz opined the offenses at Thudo Billiards on September 13, 2002 and September 29, 2002 and the crimes at Read's Liquor on January 3, 2003 were committed for the benefit of the 18th Street gang. The robbery of Tran on September 13, 2002 at the pool hall enhanced the reputation of the gang by sending a message that one should not "mess with" its members. The shooting of Ismail on September 29, 2002 demonstrated the gang, not law enforcement, was in control of its turf. The ruthless and violent manner in which the shooting occurred helped the gang rule its turf by intimidating people in the community who might try to turn to law enforcement for protection against the gang. Regarding the January 3, 2003 robbery at Read's Liquor, Pultz testified that robbery benefits the gang because the money obtained is frequently used to bail gang members out of jail or otherwise help them and that the display of the shotgun enhanced the gang's reputation for dangerousness and promoted its ability to intimidate. Moreover, having three gang members undertake the robbery benefited the gang by showing other members the importance of teamwork.

### f. *Defense theory*

Velasquez did not present any evidence in his defense but argued the People had not proved the intent-to-kill element for the attempted murder of Ismail in count 9 and reasonable doubt existed as to whether it was indeed Velasquez who had committed the charged offenses.

### 3. *The Jury's Verdict and Sentencing*

The jury found Velasquez guilty on counts 1 and 2 for attempted second degree robbery, counts 3 and 4 for assault with a firearm, count 5 for possession of a short-barreled shotgun, counts 7 and 12 for possession of a firearm by a felon, count 9 for attempted murder that was willful, deliberate and premeditated, count 10 for second degree robbery and count 11 for petty theft. The jury found Velasquez not guilty on count 6 for possession of a short-barreled shotgun and on count 8 for possession of a firearm by a felon. The jury found true the special allegations regarding firearm use with respect to counts 1, 2, 3 and 9 and the special allegation that Velasquez had inflicted great bodily injury on the victim in committing the attempted murder in count 9. The jury also found true the special allegation that Velasquez had committed all offenses (except the petty theft charge in count 11) for the benefit of, at the direction of or in association with a criminal street gang. The jury did not make findings on the firearm enhancement under section 12021.5, subdivision (a), alleged with respect to counts 7 and 12.

The trial court sentenced Velasquez to a principal term of 24 years on count 3 for assault with a firearm (the upper term of four years, plus the upper term of 10 years for the firearm enhancement under section 12022.5, subdivision (a), and 10 years for the criminal street gang enhancement under section 186.22, subdivision (b)(1)), plus a consecutive life term on count 9 for attempted murder, with a minimum parole eligibility date of 15 years under section 186.22, subdivision (b)(5), plus 25 years to life for the firearm enhancement under section 12022.53, subdivision (d). The court imposed concurrent terms on all other counts; and the sentences on counts 1, 4 and 7 were stayed pursuant to section 654. The court struck all remaining special allegations pursuant to section 1385.

### CONTENTIONS

Velasquez contends the trial court erred by denying his motion to bifurcate the trial of the substantive offenses from the trial of the criminal street gang enhancement because the introduction of evidence on the 18th Street gang prejudiced his case. He also contends the evidence is insufficient to support the jury's finding that the crimes for which he was convicted (except the petty theft offense) were committed for the benefit of, at the direction of or in association with a criminal street gang. With respect to sentencing, Velasquez asserts: (1) the imposition of upper terms on his sentence on count 3 for assault with a firearm and on the related firearm enhancement is improper because the trial court failed to state on the record its reasons for imposing upper terms and, additionally, violated his right to a jury trial under *Blakely* and *Cunningham*; (2) his sentences on counts 5 and 12 should have been

stayed under section 654; and (3) firearm enhancements under section 12021.5, subdivision (a), should not have been imposed on counts 5, 10 and 12.

## DISCUSSION

1., 2.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

3. *No Reversible Sentencing Error Occurred in Imposing Upper Terms on the Conviction for Assault with a Firearm and the Related Firearm Enhancement*

a. *Velasquez forfeited his claim the upper terms are improper because the trial court failed to state on the record its reasons for imposing those terms*

Velasquez contends the imposition of upper terms on count 3 for assault with a firearm and the firearm enhancement related to that count is improper because the trial court failed to state on the record its reasons for imposing the upper terms. (See former § 1170, subd. (b); Stats. 2004, ch. 747, § 1 ["court shall set forth on the record the facts and reasons for imposing the upper or lower term"].)[4] He, however, made no objection when the trial court failed to state reasons for imposing the upper terms. The record is clear that Velasquez's counsel was well aware of the court's sentencing choices and had a meaningful opportunity to object. Indeed, counsel did object to the court's use of an aggravating factor in ordering the sentence on count 3 to run consecutively with the sentence for attempted murder on count 9. Thus, by failing to object, Velasquez has forfeited his claim the upper terms are improper because the trial court did not state its reasons for selecting those terms.[5] (*People v. Scott* (1994) 9 Cal.4th 331, 353 [36 Cal.Rptr.2d 627, 885 P.2d 1040] ["waiver doctrine should apply to claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices"]; *People v. Zuniga* (1996) 46 Cal.App.4th 81, 84 [53

See footnote, *ante*, page 1503.

[4] Senate Bill No. 40 (2007–2008 Reg. Sess.), signed into law by the Governor as an urgency measure on March 30, 2007, amended section 1170, subdivision (b), to respond to the *Cunningham* decision by making the selection of the appropriate prison term from the triad specified by statute entirely discretionary with the trial court. As amended, the section provides, in part, "The court shall set forth on the record the reasons for imposing the term selected . . . ."

[5] Failure to present a claim or objection in a timely fashion results in a "forfeiture," rather than a "waiver," of the point. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293, fn. 2 [13 Cal.Rptr.3d 786, 90 P.3d 746].)

Cal.Rptr.2d 557] [finding waiver when counsel had a meaningful opportunity to object to court's sentencing choice but failed to do so].)

> b. *Imposition of the upper terms did not violate Velasquez's right to a jury trial*

Velasquez's determinate sentence of 24 years on count 3 for assault with a firearm consisted of the upper term of four years, plus the upper term of 10 years for the firearm enhancement under section 12022.5, subdivision (a), and an additional 10 years for the criminal street gang enhancement. As discussed, in selecting the upper terms the trial court failed to articulate on the record its reasons for doing so; and Velasquez failed at that time to object. However, in deciding to impose the sentence on count 3 consecutively with the sentence on count 9 (attempted murder), the trial court stated on the record five aggravating circumstances: (1) the crimes involved great violence, great bodily injury or threat of great bodily injury (Cal. Rules of Court, rule 4.421(a)(1));[6] (2) the victims were particularly vulnerable (rule 4.421(a)(3)); (3) Velasquez was armed with a firearm during the commission of some of the crimes (rule 4.421(a)(2));[7] (4) Velasquez has engaged in a pattern of violent conduct, which presents a danger to society (rule 4.421(b)(1)); and (5) Velasquez had served a prior prison term (rule 4.421(b)(3)). The probation report provided to the court prior to sentencing identified some of the same aggravating factors mentioned by the trial court and also that Velasquez's prior convictions as an adult or adjudication of commission of crimes as a juvenile were numerous or of increasing seriousness (rule 4.421(b)(2)). In their sentencing memorandum the People identified additional factors they believed applicable to the case: (1) Velasquez induced others to participate in the commission of the crime or occupied a position of leadership or dominance of other participants in its commission (rule 4.421(a)(4)); and (2) the manner in which the crime was carried out indicates planning, sophistication or professionalism (rule 4.421(a)(8)).

As he did in his supplemental opening brief filed shortly after *Blakely, supra*, 542 U.S. 296, was decided in late June 2004, in his letter brief on

---

[6] References to a rule or rules are to the California Rules of Court.

[7] Velasquez objected in the trial court to the court's reliance on his use of a firearm in committing some of the offenses in connection with the imposition of consecutive sentences on counts 3 and 9 because his sentence on both counts had been enhanced for firearm use. (Rule 4.425(b) [any circumstances in aggravation may be considered in deciding whether to impose consecutive rather than concurrent sentences except (i) "[a] fact used to impose the upper term," (ii) "[a] fact used to otherwise enhance the defendant's prison sentence," and (iii) "[a] fact that is an element of the crime . . . ."] It would be equally improper for the trial court to rely on the fact Velasquez had used a firearm in committing an assault with a firearm at Read's Liquor, as alleged in count 3, to impose upper terms. (Former § 1170, subd. (b) ["The court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law"].)

remand from the United States Supreme Court for reconsideration of this case in light of *Cunningham, supra,* 549 U.S. 270 [127 S.Ct. 856], Velasquez contends imposition of the upper term sentences for assault and the related firearm use enhancement based on factual determinations made by the court, not the jury, violated his right to a jury trial guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.[8]

■ In *Cunningham* the Supreme Court reaffirmed *Apprendi v. New Jersey, supra,* 530 U.S. 466 [120 S.Ct. 2348, 147 L.Ed.2d 435] *(Apprendi), Blakely, supra,* 542 U.S. 296, and *United States v. Booker* (2005) 543 U.S. 220 [160 L.Ed.2d 621, 125 S.Ct. 738], overruled *Black, supra,* 35 Cal.4th 1238,[9] and held California's determinate sentencing law (DSL) violates a defendant's constitutional right to a jury trial to the extent it authorizes the trial judge to find facts (other than a prior conviction) that expose a defendant to an upper term sentence by a preponderance of the evidence. "This Court has repeatedly held that, under the Sixth Amendment, any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence." *(Cunningham, supra,* 549 U.S. at pp. ___–___ [127 S.Ct. at pp. 863–864].)

■ "Under California's DSL, an upper term sentence may be imposed only when the trial judge finds an aggravating circumstance. . . . [A]ggravating circumstances depend on facts found discretely and solely by the judge. In accord with *Blakely,* therefore, the middle term prescribed in California's statutes, not the upper term, is the relevant statutory maximum. [*Blakely,*

---

[8] Velasquez's sentencing hearing was held on November 14, 2003, more than seven months before *Blakely* was decided. Although Velasquez did not object on constitutional grounds in the trial court to the imposition of the upper term sentence on count 3 and the related gun enhancement, in their supplemental briefing on remand from the United States Supreme Court, the People do not contend Velasquez has forfeited his *Blakely/Cunningham* argument, implicitly recognizing (as we had held in our February 16, 2005 opinion) any such objection based solely on *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435, 120 S.Ct. 2348] would have been futile. (See *People v. Boyette* (2002) 29 Cal.4th 381, 432 [127 Cal.Rptr.2d 544, 58 P.3d 391] [timely objection not required to preserve issue for appeal if objection would be futile]; see also *People v. Vera* (1997) 15 Cal.4th 269, 276–277 [62 Cal.Rptr.2d 754, 934 P.2d 1279] [constitutional claim, including denial of right to a jury trial, may be raised for first time on appeal]; *People v. Scott, supra,* 9 Cal.4th at p. 353 [purpose of requiring defendant to object to sentencing choices at time sentence is imposed is to allow trial court to immediately address and remedy correctible errors].)

[9] On February 20, 2007, the United States Supreme Court vacated the judgment in *Black, supra,* 35 Cal.4th 1238, and remanded the case to the California Supreme Court for further consideration in light of *Cunningham, supra,* 549 U.S. 270 [127 S.Ct. 856].) On February 21, 2007 the California Supreme Court directed the parties on remand to submit additional briefs addressing the effect of *Cunningham* on the issues in the case. (*People v. Black,* 35 Cal.4th 1238, overruled and cause remanded for further consideration in light of *Cunningham, supra,* 549 U.S. 270 [127 S.Ct. 856] (order on remand Feb. 21, 2007, S126182).)

*supra,*] 542 U.S., at 303 ('The "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*' (emphasis in original)). Because circumstances in aggravation are found by the judge, not the jury, and need only be established by a preponderance of the evidence, not beyond a reasonable doubt [citation], the DSL violates *Apprendi*'s bright-line rule: Except for a prior conviction, 'any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' [Citation.]" (*Cunningham, supra,* 549 U.S. at p. ___ [127 S.Ct. at p. 868].)

Although *Cunningham* invalidated a significant part of the DSL and generally precludes the trial judge from finding facts or circumstances in aggravation that expose a defendant to an elevated or upper term sentence, the Supreme Court also reaffirmed its prior holdings that the trial court may increase the penalty for a crime based upon the defendant's prior convictions without submitting that question to a jury. (*Cunningham, supra,* 549 U.S. at p. ___ [127 S.Ct. at p. 868]; see *Almendarez-Torres v. United States* (1998) 523 U.S. 224 [140 L.Ed.2d 350, 118 S.Ct. 1219]; *Blakely, supra,* 542 U.S. at p. 301; *Apprendi, supra,* 530 U.S. at pp. 488, 490.) Prior to the decision in *Cunningham* (and before the California Supreme Court's decision in *Black, supra,* 35 Cal.4th 1238), this prior conviction exception to *Apprendi* and *Blakely* was construed broadly by California appellate courts to apply not only to the fact of the prior convictions but also to other issues relating to the defendant's recidivism, including the defendant's status as a probationer or parolee at the time the current offense was committed and the existence of "numerous" or increasingly serious prior convictions. (*People v. Thomas* (2001) 91 Cal.App.4th 212, 221–222 [110 Cal.Rptr.2d 571] ["courts have held that no jury trial right exists on matters involving the more broadly framed issue of 'recidivism' "]; see *People v. McGee* (2006) 38 Cal.4th 682, 706–707 [42 Cal.Rptr.3d 899, 133 P.3d 1054] ["numerous state and federal court decisions have interpreted the *Almendarez-Torres* exception more broadly than defendant urges here, and have concluded that *Apprendi* does not preclude a court from making sentencing determinations related to a defendant's recidivism"].)[10]

---

[10] The question whether this is a proper interpretation of the prior conviction exception of *Almendarez-Torres v. United States, supra,* 523 U.S. 224, as set forth in *Cunningham,* is currently pending before the California Supreme Court. (*People v. Towne,* review granted July 14, 2004, S125677, supplemental briefing ordered Feb. 7, 2007 [parties to address the following issue, among others: "Do *Cunningham v. California, supra,* and *Almendarez-Torres v. United States*[, *supra,*] 523 U.S. 224, 239–247, permit the trial judge to sentence defendant to the upper term based on any or all of the following aggravating factors, without submitting them to a jury: the defendant's prior convictions as an adult are numerous and of increasing seriousness; the defendant has served a prior prison term; the defendant was on parole when the crime was committed; the defendant's prior performance on probation or parole was

■ As discussed, in selecting the upper terms the trial court did not articulate on the record its reasons for doing so; and Velasquez failed at that time to object. Based on a review of the various presentencing reports and the People's sentencing memorandum submitted to the trial court in connection with its sentencing decision in this case, however, it is apparent that two of the aggravating factors present in this case—that Velasquez had served a prior prison term and that his prior adult convictions were numerous—directly relate to Velasquez's recidivism, as that term has been construed by California appellate courts. (See *People v. Yim* (2007) 152 Cal.App.4th 366 [60 Cal.Rptr.3d 887] [post-*Cunningham* case; imposition of upper term sentence based on court's finding of recidivism-related factors does not violate defendant's Sixth Amendment right to jury trial]; *People v. Abercrombie* (2007) 151 Cal.App.4th 585, 591 [59 Cal.Rptr.3d 920] [same].) Accordingly, the trial court could properly rely on those two aggravating factors to impose an upper term for assault and the related firearm enhancement.

To be sure, the other factors the trial court may in fact have considered in imposing the upper term sentences—that the assault at the liquor store involved great violence, great bodily harm or threat of bodily harm, that the victim was particularly vulnerable, that Velasquez induced others to participate in the crime or occupied a position of leadership over other participants in its commission, that the manner in which the crime was carried out involved planning, sophistication or professionalism and that Velasquez has engaged in violent conduct indicating a serious danger to society—were not established by means that satisfy the Sixth and Fourteenth Amendments under *Blakely* and *Cunningham*.[11] And we acknowledge we cannot be certain whether, particularly in light of the lengthy indeterminate sentence imposed on Velasquez on count 9 (life, with a minimum parole eligibility date of 15 years, plus 25 years to life), the trial court would have chosen a lesser sentence for count 3 had it considered only the two recidivist factors.

unsatisfactory (California Rules of Court, Rule 4.421, subds. (b)(2)–(b)(5))?"]; *People v. Hernandez*, review granted Feb. 7, 2007, S148974; *People v. Pardo*, review granted Feb. 7, 2007, S148914.)

[11] Failure to obtain jury determinations as to the aggravating factors that implicate *Blakely* and *Cunningham* may be harmless beyond a reasonable doubt. (See *Washington v. Recuenco* (2006) 548 U.S. 212 [165 L.Ed.2d 466, 126 S.Ct. 2546] [*Apprendi/Blakely* error not "structural error" requiring automatic reversal]; *People v. Sengpadychith* (2001) 26 Cal.4th 316, 327 [109 Cal.Rptr.2d 851, 27 P.3d 739] [*Apprendi* error reviewable under the harmless error standard of *Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 87 S.Ct. 824]].) Here, however, despite the severity of the assault with a firearm, which also involved an attempted robbery of the liquor store during which Velasquez went behind the counter and pointed a shotgun at one of the store's owners, we cannot say beyond a reasonable doubt the jury would have made the findings necessary to support any of the remaining aggravating factors, although the evidence is certainly sufficient to sustain such findings if they had been made by the jury.

Nonetheless, those two factors alone[12]—Velasquez's prior prison term and his numerous prior adult convictions, each established by means that satisfy the governing Sixth Amendment· authorities—"exposed" Velasquez to an upper term sentence under the DSL on the assault charge and the related firearm enhancement. The upper terms were thus fully authorized as the statutory maximum based on the jury's verdict and the court's findings on the recidivism factors. (See *People v. Osband* (1996) 13 Cal.4th 622, 730 [55 Cal.Rptr.2d 26, 919 P.2d 640] [single valid factor in aggravation supports imposition of upper term].) As a result, even though the trial judge may have relied more broadly on the nature of his past,and current crimes as aggravating factors in exercising his discretion to impose the two upper terms, Velasquez's Sixth and Fourteenth Amendment rights under *Cunningham* were not violated. (See *Cunningham, supra*, 549 U.S. at pp. ___–___ [127 S.Ct. at pp. 863–864] ["[t]his Court has repeatedly held that, under the Sixth Amendment, any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge . . ."];[13] *People v. Reyes* (2007) 150 Cal.App.4th 735, 739 [58 Cal.Rptr.3d 692] [because existence of single aggravating circumstance established by constitutionally permissible means is sufficient to support imposition of upper term as statutory maximum for offense, "trial court properly made its own additional. findings. regarding aggravating circumstances not submitted to the jury in support of its discretionary sentencing decision"].)

Indeed, Justice Kennard in her concurring and dissenting opinion in *Black, supra*, ·35 Cal.4th 1238, made just this argument: "Under California law, the existence of a single aggravating circumstance is sufficient to support imposition of an upper term. [Citation.] In this case, the jury's findings pertaining to defendant's probation eligibility, and the trial court's findings pertaining to defendant's criminal record, were each sufficient to satisfy this statutory requirement, thereby making the upper term the statutory maximum for the

---

[12] The same fact cannot be used to impose an upper term on a base count and an upper term for an enhancement. (*People v. Scott, supra*, 9 Cal.4th at p. 350.) Accordingly, both recidivism factors are necessary to support the two upper term sentences imposed in this case.

[13] Had the Supreme Court intended to hold that *all* aggravating factors upon which the trial court bases its decision to impose the upper term must be established by means that satisfy the Sixth Amendment, we have no doubt Justice Ginsburg would have written the court's opinion in *Cunningham* to clearly impose that requirement, rather than speaking in terms of the existence of a constitutionally proper aggravating factor that *exposes* the defendant to the upper term sentence or situations in which the upper term is *authorized*, language that plainly connotes the existence thereafter of a sentencing determination to be made by the trial court after reviewing circumstances in aggravation and mitigation not submitted to the jury. This interpretation of *Blakely* and *Cunningham*, which we believe is compelled by the plain language of those cases, no more trivializes the significance of those decisions than does the Legislature's passage of Senate Bill No. ·40 (2007–2008 Reg. Sess.), which now "exposes" a defendant to the upper term sentence in the discretion of the trial court without any further factual findings that satisfy the governing Sixth Amendment authorities. (See fn. 4, *ante.*)

offense. [Citation.] Once the upper term became the statutory maximum in this manner, defendant's right to jury trial under the federal Constitution's Sixth Amendment was satisfied, and the trial court on its own properly could—and did—make additional findings of offense-based aggravating circumstances in support of its discretionary sentence choice to impose the upper term." (*Black*, at p. 1270 (conc. & dis. opn. of Kennard, J.).)[14]

█ In sum, the trial court did not commit sentencing error in imposing the upper term on count 3 and the related firearm enhancement.

4.–6.[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is modified to strike the firearm enhancements imposed on counts 5, 10 and 12. As modified, the judgment is affirmed. The superior court is directed to prepare a corrected abstract of judgment deleting the firearm enhancements imposed under section 12021.5, subdivision (a), on counts 5, 10 and 12 and reflecting the stay of sentence on counts 4 and 7 and to forward the corrected abstract of judgment to the Department of Corrections.

Woods, J., concurred.

**JOHNSON, J.,** Concurring and Dissenting.—I concur in all portions of the majority opinion, with the exception of part 3b. of that opinion which upholds imposition of upper term sentences despite the U.S. Supreme Court's opinion in *Cunningham v. California*.[1] I do so for reasons recited previously in both majority and dissenting opinions and repeat here only because the California Supreme Court already has or is likely to grant review, as it appears to have done in all *Cunningham* cases.

In my view, on this record we cannot conclude the trial court would have imposed the high terms on each and all of these counts based solely on its

---

[14] The question whether there is a violation of the defendant's rights under *Cunningham* if the defendant is eligible for the upper term based on a single aggravating factor established by means that satisfy the governing Sixth Amendment authorities even if the trial judge relies on other aggravating factors not established by such means in exercising his or her discretion to impose an upper term sentence is also currently pending before the California Supreme Court. (E.g., *People v. Black, supra,* S126182; *People v. Towne, supra,* S125677.)

[*] See footnote, *ante,* page 1503.

[1] *Cunningham v. California* (2007) 549 U.S. 270 [166 L.Ed.2d 856, 127 S.Ct. 856].

*assumed* findings appellant had served a prior prison term and had "numerous" convictions. Indeed, because the trial court failed to put its findings on the record, we have to speculate whether it would have made those findings and also whether it would have considered them worthy of mention to say nothing of determinative of its decision to impose the high term sentences on these counts.

For purposes of this dissent, I accept the test the California Supreme Court announced in *People v. Avalos.*[2] That is, in reviewing a sentence based on both proper and improper aggravating factors we "must . . . reverse where [we] cannot determine whether the improper factor was *determinative for the sentencing court.*"[3] It is not what *could* have been determinative if the trial court had known some of the factors it used would turn out to have been improper. Rather, it is what the sentencing court *did* use that "*was* determinative" in fixing the sentence the trial court actually meted out.

Here we have only speculation to guide us in seeking to divine which factors the trial court used at all and which of those factors were determinative in raising the sentences on these counts to the upper term. From the majority opinion itself, we do know most of the available aggravating factors were ones only a jury not a judge could properly find true under *Cunningham.*

The majority opinion cites a passage from the Supreme Court's opinion in *People v. Osband*[4] to the effect "[o]nly a single aggravating factor is required to impose the upper term."[5] But this pre-*Apprendi* case has little relevance to the case before this court. After upholding the death sentence Osband received for a rape-murder, the court turned to the determinate prison sentences the trial court imposed for other offenses occurring during the crime. Finding the trial court violated the "dual use" prohibition by using one of the aggravating factors to both make the sentences consecutive and to impose the high term on one of those offenses, the court had to decide whether the high term could be affirmed on the basis of other aggravating factors. " 'Improper dual use of the same fact for imposition of both an upper term and a consecutive term or other enhancement does not necessitate resentencing if "[i]t is *not reasonably probable* that a more favorable sentence would have been imposed in the absence of the error." ' [Citation.] . . . . In this case, the court could have selected disparate facts from among those it

---

[2] *People v. Avalos* (1984) 37 Cal.3d 216 [207 Cal.Rptr. 549, 689 P.2d 121].

[3] *People v. Avalos, supra,* 37 Cal.3d at page 233, italics added.

[4] *People v. Osband* (1996) 13 Cal.4th 622 [55 Cal.Rptr.2d 26, 919 P.2d 640], upholding the death penalty as well as upper term and consecutive sentences for related crimes in a rape-murder case.

[5] *People v. Osband, supra,* 13 Cal.4th at page 728.

recited to justify the imposition of both a consecutive sentence and the upper term, and on this record we discern *no reasonable probability* that it would not have done so."[6]

*Osband* and its statement saying a single aggravating factor will suffice is readily distinguishable. In that case, only *Watson* error was involved—dual use of an aggravating factor in violation of a statutory prohibition. Thus, the reviewing court only remands for resentencing if it finds a "reasonable probability" the trial court would *not* have imposed the. high term had the improper factor been unavailable. Furthermore, in *Osband* only one of several strong aggravating factors had been found improper. It was as if in the case before this court somehow only the trial court's finding of victim vulnerability had violated *Cunningham* and its predecessors, while any of the several other aggravating factors relating to violence, appellant's leadership position, and the planning, sophistication or professionalism of the crime had remained available to upgrade the sentences on these offenses. While it is true even a single legitimate aggravating factor *can* support an upper term, that is true only if the trial court indeed found that single legitimate factor sufficient by itself to impose the upper term sentence it did—or definitely would have if it were the only aggravating factor in the case. The mere presence of a legitimate aggravating factor does not justify upholding an upper term sentence.

In the case before this court, in contrast to *Osband*, the nonrecidivist factors the trial court, rather than the jury, found to be true were not just improper, but constitutionally improper. Consequently, the *Chapman* standard[7] applies and we must remand for resentencing unless we can determine *beyond a reasonable doubt* the improper factor or factors were *not* determinative in the sense of tipping the scale toward the upper term. Here we have nothing but speculation about what the judge might have done to make that evaluation.

The majority suggests the presence of *any* prior conviction in a defendant's past effectively negates *Apprendi-Blakely-Cunningham*. In this case, as long as the trial court had before it a prior conviction or some other recidivist factor which it *might* have used to elevate defendant's punishment defendant is to be considered "exposed" to that aggravated term and thus it does not violate *Cunningham* and its predecessors. Furthermore, because appellant was "exposed" to the high term by the mere presence of a prior in his record (even though that prior may not have been *determinative* in the trial court's imposition of the high term) the trial court was free to itself find and use other aggravating factors the jury otherwise would be required to find when

---

[6] *People v. Osband, supra,* 13 Cal.4th at pages 728–729, italics added.

[7] *Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824].

the court was making the court's decision whether or not in fact to elevate the sentence from the midterm to the high term. (Maj. opn., *ante*, at p. 1514.)

According to this line of reasoning, a conviction or other recidivist factor a trial court did not consider serious enough by itself to warrant an upper term nonetheless trumps *Cunningham* and its predecessors. The mere presence of that prior conviction in a defendant's record permits a trial judge rather than the jury to find the factors the court deems the true reason for raising the sentence beyond that permitted by the findings the jury made. The result? *Apprendi-Blakely-Cunningham* would only apply when trial courts are sentencing defendants who have *no* prior convictions. Even a single prior conviction, or a single juvenile adjudication many years in the past, would be enough to disable the requirement aggravating factors be decided by a jury not the sentencing judge.

In my view, this position represents the sort of narrow reading of *Apprendi* which would force the United States Supreme Court to once again emphasize it meant what it said in that opinion, as it did in *Blakely* and now in *Cunningham*. I find nothing in *Apprendi*, *Blakely* or *Cunningham* to suggest the requirement of jury findings as to aggravating factors other than prior convictions is disabled in any and all cases where the defendant had a prior conviction. Yes, a prior conviction can be used to elevate a sentence without a jury finding. Yes, a trial judge can use a prior conviction alone as the sole grounds for elevating a sentence—at least when that is appropriate. But this does not mean the prior conviction can serve as a smokescreen behind which the trial judge in fact employs other factors as the true reasons for determining the higher term is warranted.

Perhaps it will be helpful to clarify the limited point of this dissent in the context of the case before this court. I am not saying remand would necessarily be required had the trial judge expressly said he would elevate the sentence to the upper term based *solely* on the prior convictions and related behavior. (Such a statement would compel a reviewing court to determine whether this represented an abuse of discretion, however, something I need not address here.) Had the judge made this clear during the sentencing hearing, reversal might not be required even though he had gone on to say he also found the other aggravating factors to be enough by themselves to impose the high term.

But the trial judge here did something entirely different. He imposed the upper terms without stating why he was doing so, and without even making any findings as to any of those factors.

Accordingly, I would remand for resentencing. At that hearing, without any further findings, the trial court could impose the midterm on any or all of the offenses on which it previously imposed the high term. As to any of the offenses on which it proposes to impose the high term once again, however, the trial court would be required to ignore the factors it improperly found true and determine whether it would still elevate the sentence to the high term as to that offense based solely on (1) the elements of the offense charged and found true beyond a reasonable doubt by the jury, and (2) appellant's prior convictions for which no jury finding is required.

Appellant's petition for review by the Supreme Court was denied October 17, 2007, S155357. George, C. J., did not participate therein.