Filed 6/30/23  P. v. Johnson CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C096895 |
| Plaintiff and Respondent, | (Super. Ct. No. 16FE014655) |
| v. | |
| JACKIE EDWARD JOHNSON, | |
| Defendant and Appellant. | |

This is the third appeal filed by defendant Jackie Edward Johnson after a jury found him guilty of several offenses arising out of a physical altercation with his girlfriend.  Following his second appeal, this court remanded the matter to the trial court with directions to strike a one-year prior prison term enhancement pursuant to Senate Bill No. 136 (2019-2020 Reg. Sess.) (Senate Bill 136).  On remand, the trial court struck that enhancement and resentenced defendant to an aggregate term of 24 years eight months in state prison.  Defendant appeals from that order.

In this appeal, defendant contends the trial court wrongly imposed the upper term, erred by refusing to strike an enhancement pursuant to Penal Code section 1385,

1

subdivision (c),[1] abused its discretion in failing to strike the serious felony enhancement, and failed to correctly calculate defendant's custody credits. The People concede the court failed to correctly calculate defendant's custody credits and we accept the People's concession. We will direct the court to recalculate defendant's custody credits and amend the abstract of judgment accordingly. Finding no other error, we will otherwise affirm the judgment.

BACKGROUND

A.    *Original judgment*

"In May 2016, defendant was in an argument and physical fight with his girlfriend J.H. During that argument, she picked up their three-month-old son. Thereafter, defendant repeatedly punched J.H. while she was holding the baby. He also tried to grab the baby. The fight continued until defendant and J.H. noticed that the baby was losing consciousness; his eyes were fluttering, and he was no longer responsive. The baby's eyes rolled back in his head and when J.H. tried to feed him, he vomited. Defendant and J.H. failed to timely seek medical care for their injured son and he sustained irreversible brain damage." (*People v. Johnson* (Oct. 28, 2020, C090656) [nonpub. opn.].)

"[A] jury found defendant guilty of two counts of felony child endangerment (§ 273a, subd. (a)) and corporal injury on a cohabitant (§ 273.5, subd. (a)). The jury also found true the allegation of personal infliction of great bodily injury on the first count of child endangerment. (§ 12022.7, subd. (d).) In a bifurcated proceeding, [relying on a certified record of conviction,] the trial court found true the allegations that defendant had a prior serious felony conviction (§§ 667, subd[s]. (a), (b)-(i), 1170.12) and had served a prior prison term (§ 667.5, subd. (b)). The court sentenced him to an aggregate prison term of 25 years and eight months." (*People v. Johnson, supra*, C090656.)

---

[1]    Undesignated statutory references are to the Penal Code.

2

To reach this sentence, the trial court first denied defendant's *Romero* motion.[2] Looking at the certified record of conviction, the court explained:

"You, at the age of 14, began in the criminal justice system as a juvenile. You pick up a misdemeanor, 1996.

"Then again in 1996, another misdemeanor.

"Then in 1997, a felony.

"Then in '98, another misdemeanor.

"And then another misdemeanor in '98.

"In '99, two felonies and a misdemeanor.

"Then wardship is terminated. You're an adult.

"You pick up a new offense, an adult offense in 2004.

"Another one in 2005.

"Another one in 2007, which was an ADW, assault with a deadly weapon or force likely.

"A first degree burglary in 2008.

"The 532, fraudulent conduct resulting in that 32-month prison sentence in 2012.

"And those are all felonies that I just recited.

"Then also in 2004 you have a misdemeanor obstructing an officer.

"And in 2006 another misdemeanor driving with a suspended license.

"You have a pattern, and have had ever since you turned the age of 14, at least, of messing up with the law, of getting crosswise with the law, and many of these offenses are quite significant, and certainly the one that brought you before me is, and your—the situation is such that you fall precisely within the ambit of the three strike rules. . . . [¶] . . . [¶] [Y]ou never successfully completed probation, it appears, on any of these, the

---

[2]     *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

3

ones you were put on probation on, but even if you did successfully, if that's going to be an issue for you, makes no difference to me with that many convictions."

When choosing the length of defendant's sentence, the trial court said, "[Y]ou have, as I indicated earlier in my ruling at the top of this proceeding, just one thing after another. And, you know, you have, I am certain, some good qualities, too. I saw some occasionally in court, but you have established a history which presents, in the Court's view, such a considerable risk to other people as a consequence of all this misconduct, the latest and worst of which [are] these horrific injuries to your son, which I know you didn't intend and I don't think that the evidence suggests that you intended those injuries, but I also know that having inflicted them or participated directly in their infliction, you didn't take the action that very likely could have totally mitigated those injuries . . . ."

Then, "based upon the record made in this proceeding," and its "assessment of all of the evidence presented in this case," the court sentenced defendant to an aggregate term of 25 years eight months in state prison:

- The upper term of six years on the first count of child endangerment, doubled to 12 years (count one);
- a consecutive five years for the great bodily injury enhancement;
- a consecutive one-third of the middle term (16 months) on the second count of child endangerment, doubled to two years eight months (count two);
- a concurrent middle term of three years for the domestic violence conviction, doubled to six years (count three);
- another consecutive five years for the section 667, subdivision (a) serious felony enhancement;
- and one year consecutive for the 667.5, subdivision (b) prior prison term enhancement.

The court also awarded defendant 403 days of custody credit.

4

B.    *First and second appeals*

Defendant appealed his conviction.  In February 2019, this court remanded the matter for the limited purpose of allowing the trial court to consider exercising its newfound discretion to strike or dismiss the five-year prior serious felony enhancement (§ 667, subd. (a)) under Senate Bill No. 1393 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1013, § 1).

On remand, the trial court declined to strike the five-year enhancement and imposed the same term:  "The sentence that this Court imposed initially this Court views as the appropriate sentence.  Even if I had the discretion pursuant to the provisions set forth in Senate Bill [No.] 1393 [2017-2018 Reg. Sess.], I don't see a basis for reducing the sentence that I did impose.

"As it happened, I imposed a lesser sentence than I could have because I ran the domestic violence part of this case concurrent."  Defendant appealed again.  This time on appeal, defendant argued the trial court abused its discretion "in refusing to strike or dismiss the five-year enhancement."  We found no abuse of discretion:  "[T]he court considered relevant factors and gave reasonable explanations for its decision to decline to strike the enhancement."

In that same appeal, defendant also argued the one-year prior prison term must be stricken under then recently enacted Senate Bill 136.  The People conceded the issue; we accepted their concession and modified the judgment to strike the one-year enhancement. We affirmed the judgment as modified and remanded the matter for resentencing.

C.    *Proceedings giving rise to this, the third appeal*

The parties appeared before the trial court on December 18, 2020.  The court stated its intent to impose "the sentence exactly as [it] did before, with the exception that [section] 667.5[, subdivision] (b) will, of course, not be imposed, as the law has changed."  The parties submitted on the tentative ruling and the court resentenced defendant to a term of 24 years eight months in state prison.

The trial court explained it was imposing the sentence "[f]or the reasons . . . stated before on two occasions—one at [the] original judgment and sentence and then when the matter was back before [the court] in connection with the exercise of discretion on the five-year [section] 667[, subdivision] (a)—that [it is] going to impose the same sentence that [it] imposed before, again, with the absence of that one year." That order was subsequently declared null and void because it was issued before the remittitur was issued. The court ordered a new resentencing hearing.

In May 2022, before the resentencing hearing, the People submitted their argument in writing. The People asserted the circumstances of this case made the upper term "legally permissible" on count one, as well as on the great bodily injury enhancement. They noted numerous circumstances in aggravation supported the upper term: (1) the crime involved great violence, great bodily harm, the threat of bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness; (2) the victim was particularly vulnerable; (3) defendant was convicted of other crimes for which consecutive sentences could have been imposed but for which concurrent sentences are being imposed; (4) defendant's prior convictions are numerous or of increasing seriousness; (5) defendant served a prior prison term; (6) and defendant's prior performance on parole or probation was unsatisfactory. There were, the People argued, no mitigating factors.

Defendant submitted his own argument in writing; he said recent changes in the law "operate[d] to limit [his] sentence to a maximum of 15 years, 8 months." He argued the trial court was precluded from imposing the upper term because no aggravating factors were found true beyond a reasonable doubt or stipulated to by defendant. Defendant also purported to identify numerous factors in mitigation including: defendant "admits that he committed domestic violence and child endangerment, but he did not inflict injury on the baby. He loves his son. [And,] [t]he acts, although physical, were

6

not planned and thought-out, nor did he attempt to use any weapon on J.H. or near the baby."

The parties appeared before the trial court for resentencing on July 15, 2022. The court acknowledged the change in law requiring circumstances in aggravation to be found before imposing the upper term, stating that "some of those findings would necessarily have to be by the trier of fact. Some would not have to be by the trier of fact . . . ." On the People's motion, the court took judicial notice of "certified priors" previously considered by the court. Defendant sought a continuance, which the court granted.

At the August 29, 2022 resentencing hearing, the trial court observed that "[e]ach of the counsel have submitted pleadings, which the Court has read and considered." The parties then presented their arguments. Among other things, the People argued the amendments to section 1385 did not eliminate the court's discretion to impose the remaining enhancements and asked the court to impose the upper term on the great bodily injury enhancement.

The trial court asked the People to explain "why you believe that 24 years and eight months is a necessary sentence as opposed to 19 years and 18 months, if one were to strike or not impose the five-year prior?" The People noted the court presided over the trial, so knew the facts of the case. In light of those facts, the People concluded, the five-year prior should be imposed because "the way that the Defendant acted, not only just in the commission of the offense, which . . . essentially nearly took the life of his child, but left his child with cerebral palsy for the rest of his life, is the kind of injury and the manner in which he committed it, I believe dictates in the interest of justice that the five years should be imposed."

Defense counsel argued the trial court could not rely on those facts to impose the five-year prior because "although those are interpretations made by the [People], and some of those would obviously be facts of the age of the child, those are not things that

were found—facts that were necessarily found by the jury, no specific findings by the jury, no unanimity as to any of those specific facts to find those as factors in aggravation.

"Certainly my understanding is that [defendant] disputes some of these facts. We don't need to go into each and every one, but without specific findings by the jury, then I—then the Court should not put great weight on those and should go towards [defendant] not having the five-year imposed on him." Counsel also argued the prior conviction was remote in time and "far exceeds the five-year threshold for the statute."

The People noted that aggravating circumstances are not required to impose the five-year prior enhancement; the trial court should look to the facts and circumstances of the case, as well as defendant's history when deciding whether to impose it. The People also noted that given the timing of resentencing, defendant's prior conviction was not as remote in time as counsel suggested but, in fact, came "within the window" for the statute. The court agreed.

Ultimately, the trial court concluded the appropriate sentence was 24 years eight months; the same sentence previously imposed, less one year as required by Senate Bill 136. Although it had "discretion to impose a more substantial sentence than was originally imposed, based upon specific findings in aggravation and the like," the court was "not going to do that." The court recognized its discretion to strike or dismiss the five-year prior but determined it "should be imposed for the reasons set forth by the [People] on this record and the reasons . . . set forth on this record, as well as previous records in connection with sentencing of [defendant].

"This was a grievous crime, and this little boy is compromised for the rest of his life as a consequence of the Defendant's actions, and the Defendant's actions were two separate chapters, essentially book ends to the crime: One's the original infliction, and, secondly, the failure to treat, to care for the child on it.

"The Court could impose a consecutive sentence for the corporal injury on the spouse. I am not doing that for the reasons I indicated before." The court imposed sentence accordingly.

## DISCUSSION

### A.     *Upper term*

Defendant asserts the trial court failed to comply with section 1170 in imposing the upper term. We conclude any error was harmless.

#### 1.     *Legal principles*

Prior to January 1, 2022, when a statute specified a triad of permissible sentences, trial courts had discretion to impose the lower, middle or upper term sentence. (See former § 1170, subd. (b); Stats. 2007, ch. 3, § 2 ["[w]hen a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court"].) Effective January 1, 2022, section 1170, subdivision (b) provides the middle term of imprisonment as the presumptive sentence and permits a trial court to impose the upper term "only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(2).) Nonetheless, the trial court may consider a defendant's prior convictions "based on a certified record of conviction without submitting the prior convictions to a jury." (§ 1170, subd. (b)(3).) The statute further requires the court to set forth on the record the reasons for choosing the sentence imposed. (§ 1170, subd. (b)(5).)

#### 2.     *Analysis*

Defendant contends the trial court erred by imposing the upper term sentence on count one without citing any aggravating circumstances on the record. Defendant, however, failed to raise this objection in the trial court. The claim is thus forfeited.

9

(*People v. Velasquez* (2007) 152 Cal.App.4th 1503, 1511 ["by failing to object, Velasquez has forfeited his claim the upper terms are improper because the trial court did not state its reasons for selecting those terms"]; see also *People v. Scott* (1994) 9 Cal.4th 331, 353 ["waiver doctrine should apply to claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices"].)

Defendant also contends the trial court erred by imposing the upper term on count one without a single aggravating circumstance being found true beyond a reasonable doubt or stipulated to by defendant. We conclude any error was harmless.

In the trial court, the People identified six aggravating circumstances in support of the upper term: Defendant's crime was vicious; his victim was particularly vulnerable; his prior crimes are numerous; he served a prior prison term; his prior performance on supervision was poor; and the court imposed a concurrent term where it could have imposed a consecutive term. Although the court did not expressly state that it was relying upon one or more of those aggravating circumstances, it is reasonable to infer that the court did. (See *People v. King* (2010) 183 Cal.App.4th 1281, 1323 [exercise of discretion at sentencing will be affirmed so long as it is not arbitrary or irrational and is supported by reasonable inferences from the record]; see also Evid. Code, § 664 [it is presumed the trial court properly performed its duty].)

We conclude the trial court did not violate defendant's Sixth Amendment right to a jury trial by imposing an upper term sentence in this case. In general, "imposition of the upper term does not infringe upon the defendant's constitutional right to jury trial so long as one legally sufficient aggravating circumstance has been found to exist by the jury, has been admitted by the defendant, or is justified based upon the defendant's record of prior convictions." (*People v. Black* (2007) 41 Cal.4th 799, 816; see also *People v. Zabelle* (2022) 80 Cal.App.5th 1098, 1111-1112 (*Zabelle*).)

Here, three of the six aggravating circumstances relied on by the trial court complied with the Sixth Amendment. First, in the 2017 bench trial, the trial court found

10

true beyond a reasonable doubt an allegation that defendant served a prior prison term. (Cal. Rules of Court, rule 4.421(b)(3).)**3** Second, the court also considered a certified record of conviction, which established that defendant had three prior juvenile felony convictions, five prior adult felony convictions, and several misdemeanor convictions. (See *People v. Black, supra*, 41 Cal.4th at p. 818 [as few as three prior convictions can be numerous]; rule 4.421(b)(2).)

Third, the trial court chose to impose a concurrent term on count three when it could have imposed a consecutive term because defendant's crimes had multiple victims. (Rule 4.421(a)(7).) Because any one of these three aggravating circumstances rendered defendant eligible for an upper term sentence under current law, the trial court's reliance on any other factors did not violate defendant's constitutional rights. (See *People v. Towne* (2008) 44 Cal.4th 63, 86; *Harris v. United States* (2002) 536 U.S. 545, 558 [153 L.Ed.2d 524, 538].)

We must now determine "whether it is reasonably probable that the trial court would have chosen a lesser sentence had it considered only these aggravating [circumstances]." (*Zabelle, supra*, 80 Cal.App.5th at p. 1112.) Given the unique circumstances here, we conclude the trial court would have imposed the same sentence with only these aggravating circumstances.

The trial court originally sentenced defendant in 2017 after presiding over his trial. That same court then had three separate opportunities to reconsider that sentence. Each time the court had the opportunity to change the sentence, the court found the sentence it originally imposed to be the "appropriate" one. The court explained the reason for the sentence, pointing out that it was not the maximum allowable term, but the one most suited to defendant's crimes. As a result, we conclude the court would have imposed the

---

**3**     Undesignated references to rules are to the California Rules of Court.

11

same sentence with only the three permissible aggravating circumstances. Thus, any error was harmless. (See *Zabelle, supra*, 80 Cal.App.5th at p. 1115.)

B. *Section 1385, subdivision (c)*

Defendant argues section 1385, subdivision (c) required the trial court to dismiss either of his five-year enhancements because there was more than one enhancement (§ 1385, subd. (c)(2)(B)) and/or because application of both enhancements results in a sentence greater than 20 years. (§ 1385, subd. (c)(2)(C).) We disagree.

Subdivision (c)(1) and (2) of section 1385 expressly refer to the sentencing court's discretion in determining whether to dismiss an enhancement. Subdivision (c)(1) of section 1385 provides that a sentencing court "shall dismiss an enhancement if it is in the furtherance of justice to do so." This provision accords the trial court general discretion to determine whether dismissal of an enhancement is "in the furtherance of justice." Subdivision (c)(2) of section 1385 directs the trial court in "exercising its discretion" to "consider and afford great weight to evidence" the defendant offers showing that "any of the mitigating circumstances in subparagraphs (A) to (I) are present," adding that "[p]roof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." Read together, these phrases direct the trial court to give great weight to evidence of the presence of the enumerated circumstances and that such proof weighs greatly in favor of dismissing the enhancement. However, if the court finds dismissing the enhancement would endanger public safety, proof of a mitigating circumstance does not weigh greatly in favor of dismissal.

The language in subdivision (c)(1) and (2) of section 1385 cannot be reconciled with defendant's assertion that a court has no discretion when it comes to subdivision (c)(2)(B) and (C). Subdivision (c)(1) and (2) guide the exercise of discretion but do not eliminate it with respect to any of the "mitigating circumstances in subparagraphs (A) to (I)." (§ 1385, subd. (c)(2).)

12

For the same reasons, the language in subdivision (c)(2)(B) and (C) of section 1385—that an "enhancement shall be dismissed"—does not mandate dismissal or otherwise deprive the court of discretion under the statute. (See, e.g., *People v. Lipscomb* (2022) 87 Cal.App.5th 9, 18.) Dismissal of either five-year enhancement was, therefore, not compelled by section 1385.

C. *Serious felony enhancement*

Defendant also argues the trial court abused its discretion in refusing to strike the section 667, subdivision (a) prior serious felony enhancement. We conclude the court acted well within its discretion.

Under the current version of section 1385, subdivision (b), trial courts have the discretion to strike or dismiss a five-year prior serious felony enhancement "in the furtherance of justice." (§ 1385, subd. (b)(1); see also § 667, subds. (a) & (f)(2).)

A trial court's decision not to strike or dismiss a prior serious felony enhancement is reviewed for abuse of discretion. "In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, ' "[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' [Citations.] Second, a ' "decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' [Citations.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person would agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 376-377.)

In exercising its discretion under section 1385, subdivision (b)(1), a trial court considers factors including a defendant's rights, the interests of society, and

individualized considerations pertaining to defendant, his offense, and his background. (*People v. Rocha* (2019) 32 Cal.App.5th 352, 359.)

Although defendant "concedes" his crimes "were serious," and "the facts of the instant case . . . were extremely serious and disturbing," he nevertheless argues he is "not 'the worst' " the court has seen and thus, "is not deserving of a sentence of over 24 years." According to defendant, the following factors support striking the enhancement: the predicate offense is remote in time, he loves his son, and he did not intend to hurt his son. Defendant also argues that because one of his current offenses is a violent felony, he must serve 85 percent of his sentence before he is eligible for parole, which results in a prison term that does not fit the offense.

We find no abuse of discretion. The trial court considered the arguments made by counsel both in writing and at the resentencing hearing. The court noted this was not the first time it considered defendant's argument, nor is it ours. The court incorporated its prior reasons for denying defendant's motion, reasons this court already has affirmed. The court reminded defendant that it was defendant's own criminal conduct and failure to act that resulted in a "little boy" suffering permanent brain damage. The sentence, the court concluded, thus fit the crime. On this record, we cannot conclude the court's decision was so arbitrary and capricious as to render it an abuse of discretion.

D.     *Custody credits*

Defendant contends the trial court failed to recalculate custody credits on remand. The People agree the trial court should have recalculated defendant's custody credit to include his days in custody from the original sentence in 2017 to the sentence imposed in 2022.

When defendant was sentenced in 2017, the abstract of judgment stated the total credit he received for time in custody was 403 days. After resentencing defendant on remand in 2022, the trial court said defendant "obviously has substantial years of credit since then in the Department of Corrections and Rehabilitation, which is accounted for by

14

the Department." The abstract of judgment continued to state, however, that defendant had 403 days of custody credits.

It was the trial court's responsibility to recalculate defendant's custody credits. "When . . . an appellate remand results in modification of a felony sentence during the term of imprisonment, the trial court must calculate the actual time the defendant has already served and credit that time against the 'subsequent sentence.' [Citation.]" (*People v. Buckhalter* (2001) 26 Cal.4th 20, 23, italics omitted.) In *Buckhalter*, the California Supreme Court held that "the Court of Appeal erred in concluding that the trial court had no responsibility whatever to recalculate custody credits upon the remand. . . . [U]nder section 2900.1, the trial court, having modified defendant's sentence, should have determined all actual days defendant had spent in custody, whether in jail or prison, and awarded such credits in the new abstract of judgment." (*Buckhalter, supra*, at p. 41; *People v. Saibu* (2011) 191 Cal.App.4th 1005, 1011-1013.)

Accordingly, we will direct the trial court to recalculate defendant's custody credits from the original date of judgment in 2017 to the date of sentencing in 2022 and prepare an amended abstract of judgment. (See *People v. Saibu, supra*, 191 Cal.App.4th at p. 1013.)

## DISPOSITION

The trial court is directed to recalculate defendant's presentence custody credits, prepare an amended abstract of judgment incorporating those credits, and forward the

15

amended abstract to the Department of Corrections and Rehabilitation.  The judgment is otherwise affirmed.

                                                                                             KRAUSE          , J.

We concur:

       ROBIE           , Acting P. J.

       EARL           , J.