Filed 2/20/24  P. v. Aguilar CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CRUZ AGUILAR,<br><br>    Defendant and Appellant. | 2d Crim. No. B326991<br>(Super. Ct. No. PA075131)<br>(Los Angeles County) |

Cruz Aguilar appeals from the judgment entered after he was resentenced pursuant to Penal Code section 1172.6.[1]  The trial court vacated his prior conviction of attempted murder, redesignated it as a conviction of simple kidnapping, imposed the upper term for that conviction, and imposed consecutive terms for first degree robbery and a firearm-use enhancement.

Appellant claims the trial court erred in redesignating the attempted murder conviction and imposing a prison term for the

---

[1] Unless otherwise stated, all statutory references are to the Penal Code.

firearm-use enhancement. In addition, appellant argues that, by imposing prison terms for both kidnapping and robbery, the court violated section 654's proscription against multiple punishment.

Finally, appellant contends the trial court erroneously imposed the upper term for kidnapping. If we conclude that he forfeited this contention because his counsel failed to object, appellant maintains he was denied his constitutional right to effective assistance of counsel. We affirm.[2]

*Section 1172.6*

Section 1172.6 was added to the Penal Code by Senate Bill No. 1437 and became effective on January 1, 2019. (Stats. 2018, ch. 1015, § 4.) Section 1172.6, subdivision (a) provides in relevant part, "A person convicted of . . . attempted murder under the natural and probable consequences doctrine . . . may file a petition with the court that sentenced the petitioner to have the petitioner's . . . attempted murder . . . conviction vacated and to be resentenced on any remaining counts when" certain conditions apply.

After a facially valid section 1172.6 petition is filed and "[a]fter the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause." (*Id*., subd.

---

[2] On December 9, 2022, two days after appellant was resentenced, he filed in the superior court a timely notice of appeal from the judgment. On March 23, 2023, appellant filed in the superior court a second notice of appeal from the same judgment. The second notice is a nullity. The operative notice of appeal is the first notice.

(c).)  If an order to show cause is issued, the court shall conduct an evidentiary hearing to determine the petitioner's eligibility for relief.  (*Id.*, subd. (d)(1).)  "At the hearing . . . the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of . . . attempted murder . . . ."  (*Id.*, subd. (d)(3).)  "If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges."  (*Ibid.*)

*Factual Background*

Appellant and his co-defendants, David Valle and Carmen Garcia, were tried before a jury.  During the trial, appellant and Garcia agreed to a plea bargain.  The trial of Valle continued, and the jury convicted him.[3]

After the trial court had scheduled an evidentiary hearing on appellant's section 1172.6 petition, appellant filed a brief containing a statement of facts based on the evidence presented at the jury trial.  We quote below from the brief's statement of facts.  We omit citations to the reporter's transcript of the trial.

"On November 1, 2012, victim Avila agreed to pick up $6000 for a drug dealer . . . .  Avila called [appellant] and they arranged to meet . . . .  [Appellant] arrived in a white GMC Tahoe with co-defendant Valle.  When [appellant] realized that Avila did not bring drugs to give him, he made a phone call.  Shortly thereafter a man wearing a mask, whom Avila later referred to

---

[3] Valle appealed from his judgment of conviction.  We modified the judgment and affirmed it as modified.  (*People v. Valle* (July 22, 2015, B257673) [nonpub. opn.].)  We take judicial notice of the *Valle* opinion.  (Evid. Code, §§ 452, subd. (d), 459.)

3

as 'Palmdale,' arrived in [a] green Toyota Corolla. [*Appellant*] *pointed a semi-automatic handgun with an extended magazine at Avila.* [Italics added.] Valle and Palmdale also pointed guns at Avila. [Appellant] ordered Avila to get back into his car but ordered him to sit in the passenger seat. Palmdale drove Avila's car, with Valle in the back seat. Palmdale took Avila's keys, phone and wallet. . . .

"After driving for approximately an hour, Palmdale stopped on a dead end street. [Appellant] pulled beside them. A woman got out of [appellant's] car. The men ordered [Avila] into [appellant's] car. The woman drove Avila's car away. . . .

"[Appellant] drove to a strip mall. Palmdale ordered Avila into a Mitsubishi driven by an unknown man. Valle and Palmdale got into the Mitsubishi with Avila. [Appellant] drove away.

". . . They drove in the Mitsubishi to a donut store with an ATM machine where Palmdale was able to withdraw money using Avila's bank card.

"Next, they took Avila to a motel in Sylmar. . . . [Appellant] met them there. . . .

"[¶] . . . [Appellant] . . . was . . . upset with Avila. [He] ordered Avila to call someone to get drugs. . . . [Appellant] continued to press Avila for drugs and asked him whether he had drugs at his house. Avila lied and said there were a lot of people at the house besides his wife and children.

"[¶] . . .

"[Appellant] left the motel room about 30 minutes to an hour before Avila and the remaining defendants left the motel room and got into Avila's car. [Appellant] was not seen again by Avila after [appellant] left the motel room . . . .

4

"Valle and Garcia then forced Avila into his own car, that had been moved into the motel parking lot. . . . Garcia drove Southwest for some distance before exiting the freeway. He looked around before he stopped and ordered Avila out of the car. As Avila walked away as instructed, Valle tried to shoot him with a silver revolver. The gun malfunctioned. Avila pled for his life. Valle pulled a semi-automatic gun from his waistband and shot at Avila five times, hitting him in his buttocks, waist and legs." Avila survived the shooting.

*Appellant's Plea Bargain*

An information charged appellant with 11 counts of various felony offenses. They included attempted first degree murder (§§ 664, 187, subd. (a)), "first degree automated teller machine [ATM] robbery" (§§ 211, 212.5, subd. (b)), and simple kidnapping (§ 207, subd. (a)).

Appellant pleaded no contest to attempted second degree murder and first degree ATM robbery. He admitted a gang allegation within the meaning of section 186.22, subdivision (b)(1)(C). He was sentenced to prison for 20 years, four months: the upper term of nine years for attempted murder, plus consecutive terms of 10 years for the gang enhancement and one year, four months for the robbery. Pursuant to the plea bargain, the court dismissed the remaining charges and enhancements, including simple kidnapping and an allegation that appellant had personally used a firearm within the meaning of section 12022.53, subdivision (b).

*Appellant's Resentencing Pursuant to Section 1172.6*

The trial court scheduled the matter for an evidentiary hearing (§ 1172.6, subd. (d)(1)), but the hearing did not occur. Appellant acknowledges that "neither side objected to the waiver of an evidentiary hearing."

On the date set for the evidentiary hearing, the People conceded that appellant was eligible for resentencing on the attempted murder conviction. The trial court vacated that conviction, redesignated it as a conviction of the target offense of simple kidnapping, and imposed the upper term of eight years. The court imposed a consecutive 10-year term for the previously dismissed allegation that appellant had personally used a firearm within the meaning of section 12022.53, subdivision (b). In addition, the court imposed a consecutive term of one year, four months for the first degree robbery conviction. Accordingly, appellant's aggregate sentence was 19 years, four months – one year less than the original sentence.

The court stated that "[t]here were multiple target offenses" and that it was trying "to keep alive the letter and spirit of [the plea] agreement."

*Redesignation of Attempted Murder*

*Conviction as Conviction of Simple Kidnapping*

Section 1172.6, subdivision (d)(3) provides that where, as here, a conviction of attempted murder is vacated, "the petitioner shall be resentenced on the remaining charges." Because of the plea bargain, the only remaining charge against appellant is the first degree robbery count. Appellant claims "the superior court was obligated to resentence appellant on that count alone" and could not redesignate the attempted murder conviction as a conviction of simple kidnapping.

6

Subdivision (d)(3) should not be viewed in isolation from the other subdivisions of section 1172.6. " 'Rules of statutory construction obligate us to read a statute, and its various subdivisions, as a cohesive whole.' " (*People v. Watson* (2021) 64 Cal.App.5th 474, 487 (*Watson*).) Section 1172.6, subdivision (d)(3) must be read together with subdivision (e), which provides: "The petitioner's conviction shall be redesignated as the target offense or underlying felony for resentencing purposes if the petitioner is entitled to relief pursuant to this section, murder or attempted murder was charged generically, *and the target offense was not charged*." (Italics added.)

Appellant asserts that section 1172.6, subdivision (e) is inapplicable. He argues that "the trial court did not have the authority to redesignate appellant's conviction [of simple kidnapping] as a target offense or underlying felony because the target offense [of ATM robbery] had already been charged."

We disagree. A target offense is an "intended crime." (*People v. Medina* (2009) 46 Cal.4th 913, 920.) There were two target offenses – robbery and kidnapping – because appellant intended to commit both crimes. Appellant acknowledges that he "was charged with the target offenses of kidnapping and robbery." The prosecutor dismissed the kidnapping charge pursuant to a plea bargain, not for lack of evidence.[4] As a result

---

[4] However, before taking appellant's plea, the trial court noted that there was a problem with the victim's identification of appellant: "[I]n hearing the evidence presented at trial, there were certain factual problems with the People's case as it pertained to [appellant]. Because the victim, Mr. Avila, identified either positively or tentatively . . . two other individuals who had the moniker of 'Crook' [appellant's moniker] before he positively identified [appellant]. So there were some

7

of the dismissal, the kidnapping offense was no longer charged. Therefore, section 1172.6, subdivision (e) authorized the trial court to redesignate appellant's attempted murder conviction as a conviction of the uncharged target offense of kidnapping. Appellant could be resentenced on both this uncharged offense and the remaining charge of robbery (*Id.*, subd. (d)(3)). (See *People v. Silva* (2021) 72 Cal.App.5th 505, 530 (*Silva*) ["If a judge may redesignate a murder as a crime that was never charged, as is implicit in subdivision (e), we see no reason why he or she cannot redesignate a murder as a charge once made but dropped in circumstances where the dismissal was not for lack of evidence"].)

*Watson, supra*, 64 Cal.App.5th 474, shows that the trial court was not precluded from resentencing appellant on both simple kidnapping and first degree ATM robbery. In *Watson* the defendant pleaded guilty to second degree murder. Based on section 1172.6, he petitioned to vacate the conviction. The trial court "vacated his murder conviction, and redesignated that conviction as two offenses: first degree burglary and first degree robbery." (*Watson, supra,* at p. 477.) The defendant "argue[d] the plain language of section [1172.6] permits a court to designate only one underlying felony and, therefore, his sentence for both burglary and robbery is unauthorized." (*Id.* at pp. 477-478.)

The appellate court "conclude[d] the trial court properly redesignated the murder conviction as both burglary and robbery." (*Watson, supra*, 64 Cal.App.5th at p. 478.) It reasoned: "[R]eading section [1172.6], subdivisions (d)(3) and (e) together

identification issues with regard to [appellant's] case. And based on that, the court will accept the disposition."

8

reflects a legislative intent to grant trial courts flexibility in designating the underlying [or target] offense for resentencing purposes. [Defendant's] contention that subdivision (e) requires a court to redesignate a vacated murder conviction as only one underlying [or target] felony—even when the evidence shows beyond dispute the commission of more than one underlying [or target] felony—would run directly contrary to this principle." (*Id.* at p. 488.)

The appellate court continued: "[B]y vacating [defendant's] murder conviction and designating that conviction as first degree burglary and robbery, the [trial] court . . . calibrated [defendant's] punishment to his culpability for committing both of those crimes. To prohibit the [trial] court from doing so on the facts of this case would run contrary to the express purposes of the statute. Further, adopting [defendant's] interpretation of section [1172.6], subdivision (e) would bestow a windfall on [defendant], who has already been afforded the "'ameliorative benefits'" of the statute." (*Watson*, *supra*, 64 Cal.App.5th at p. 492; see also *Silva*, *supra*, 72 Cal.App.5th at p. 531 [in redesignating two vacated murder convictions pursuant to section 1172.6, subdivision (e), "the resentencing court could properly find Silva guilty of six counts of robbery or attempted robbery . . . and could sentence him consecutively on those counts in lieu of only two counts of murder"].)

The *Watson* court noted that section 1172.6, subdivision (e)'s provision that the "conviction shall be redesignated as *the* target offense or underlying felony" (italics added) did not limit the redesignation to a single target or underlying offense: "Penal Code section 7 . . . provides that when construing words and phrases throughout the Penal Code, 'the singular number

9

includes the plural, and the plural the singular. . . .' [Citation.] 'The rule of construction enunciated in [Penal Code] section 7 is no mere rubric—it is the law.' [Citation.] . . . Applying the rule in Penal Code section 7 here supports the conclusion that 'underlying felony' [or 'target offense'] is susceptible of either singular or plural meaning depending on context." (*Watson*, *supra*, 64 Cal.App.5th at p. 485.)

*Imposition of Firearm Enhancement upon Resentencing*

Appellant argues that the trial court erroneously imposed a 10-year consecutive term for the firearm-use enhancement: "There is a settled distinction in our penal law between an 'offense' and a sentence enhancement, and the phrase 'target offense or underlying felony' in Penal Code section 1172.6, subdivision (e) does not authorize a court to include a sentence enhancement when it redesignates a vacated conviction as the target offense or underlying felony for resentencing purposes under that subdivision."

Appellant's position is supported by *People v. Arellano* (2022) 86 Cal.App.5th 418 (*Arellano*). There, the Court of Appeal concluded that, "through the specific language [the Legislature] chose for section 1172.6, subdivision (e), [it] stated that 'for resentencing purposes,' the newly redesignated conviction shall include only the offense upon which liability for murder or attempted murder was based." (*Id.* at p. 436.) "'"[A] sentence enhancement is not equivalent to a substantive offense . . . ."'" (*Id.* at p. 435.) Therefore, "[b]ecause the trial court redesignated Arellano's conviction and resentenced him under the purview of section 1172.6, subdivision (e), it could not properly include the firearm enhancement (§ 12022.5, subd. (a)) in Arellano's new conviction and sentence." (*Id.* at p. 437.)

10

In *Arellano* the California Supreme Court granted review on March 15, 2023 (S277962).  According to the Supreme Court's news release dated March 17, 2023, *Arellano* "presents the following issue:  When a defendant obtains resentencing of a conviction under Penal Code section 1172.6, subdivision (e), is the trial court permitted to impose not only the target offense or underlying felony, but also corresponding enhancements?"

We decline to follow *Arellano*.  Instead, we follow *People v. Howard* (2020) 50 Cal.App.5th 727 (*Howard*), disagreed with in *Arellano*, *supra*, 86 Cal.App.5th at p. 434.)  *Howard's* reasoning is as follows: "When the court redesignates the murder conviction as the underlying felony (§ [1172.6], subd. (e)), may the court impose enhancements relative to that felony? . . . Consistent with the legislative goal of placing Howard after resentencing in a situation where the murder and any related enhancements no longer exist, Howard's resentencing may not include count-specific enhancements *unless* the People establish them related to the underlying felony by evidence presented at the hearing on the section [1172.6] petition.  Our conclusion finds support in the principle that '[t]o the extent the court is determining the sentence to impose after striking the murder conviction, the traditional latitude for sentencing hearings should be allowed.' [Citation.]"  (*Id*. at pp. 741-742.)

*Howard* continued: "In our view, the violent felony designation and arming enhancement were proper because the evidence established those enhancements relative to the underlying felony, burglary.  [¶]  *When a court resentences a defendant pursuant to section [1172.6], the only limitation is the new sentence cannot be greater than the original sentence*.  (§ [1172.6], subd. (d)(1).)"  (*Howard, supra,* 50 Cal.App.5th at p. 742,

11

italics added.)  Section 1172.6, subdivision (d)(1) provides, "Within 60 days after the order to show cause has issued, the court shall hold a hearing to determine whether to vacate the . . . attempted murder . . . conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not previously been sentenced, *provided that the new sentence, if any, is not greater than the initial sentence.*"  (Italics added.)

Here, the parties waived an evidentiary hearing.  The trial court relied on briefs submitted by the parties.  Appellant's brief contained a statement of facts in which he admitted that he had personally used a firearm: "[Appellant] pointed a semi-automatic handgun with an extended magazine at Avila.  Valle and Palmdale also pointed guns at Avila."  Accordingly, the trial court properly imposed the previously dismissed section 12022.53, subdivision (b) firearm-use enhancement as to the kidnapping conviction.

*Applicability of Section 654*

Appellant claims section 654 bars punishment for both the kidnapping and ATM robbery convictions.  Section 654, subdivision (a) provides: "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision."  "'[S]ection 654 applies not only where there was but one act in the ordinary sense, but also where there was a course of conduct which violated more than one statute but nevertheless constituted an indivisible transaction. . . .  If all the offenses were *incident to one objective,* the defendant may be punished for any *one* of such offenses but not for more than one.'  [Citation.]  Whether offenses

12

are 'indivisible' for these purposes is determined by the 'defendant's intent and objective . . . .' [Citation.] 'If [a] defendant harbored "multiple criminal objectives," which were independent of and not merely incidental to each other, he may be punished for each statutory violation committed in pursuit of each objective, "even though the violations shared common acts or were parts of an otherwise indivisible course of conduct."' [Citation.] The application of section 654, thus, 'turns on the *defendant's* objective in violating' multiple statutory provisions. [Citation.] Where the commission of one offense is merely "'a means toward the objective of the commission of the other,'" section 654 prohibits separate punishments for the two offenses." (*People v. Wynn* (2010) 184 Cal.App.4th 1210, 1214-1215.)

The trial court said that section 654 does not bar punishment for both the ATM robbery and kidnapping because "they are separate indivisible offenses." The court apparently meant to say "divisible" instead of "indivisible." "We review under the substantial-evidence standard the court's factual finding, implicit or explicit, of whether there was a single criminal act or a course of conduct with a single criminal objective. [Citations.] As always, we review the trial court's conclusions of law de novo." (*People v. Moseley* (2008) 164 Cal.App.4th 1598, 1603.) Under the substantial evidence standard, "[w]e review the court's determination of [the defendant's] 'separate intents' for sufficient evidence in a light most favorable to the judgment, and presume in support of the court's conclusion the existence of every fact the trier of fact could reasonably deduce from the evidence." (*People v. Cleveland* (2001) 87 Cal.App.4th 263, 271.)

13

In arguing that section 654 bars punishment for both the robbery and kidnapping convictions, appellant reasons: "The kidnapping was all about money. It was about robbery. The intent and objective behind the commission of the robbery and the kidnapping, therefore, was necessarily the same. The two offenses . . . were part of an indivisible course of conduct with a single criminal objective . . . ."

"Numerous cases support the proposition that Penal Code section 654 bars multiple punishment for convictions of kidnapping for the purpose of robbery and for committing that very robbery. [Citations.]" (*People v. Porter* (1987) 194 Cal.App.3d 34, 37-38.) But this rule does not apply here. It is reasonable to infer that the initial kidnapping of Avila was for the purpose of committing the ATM robbery. But the kidnapping continued after the ATM robbery at the donut store had been completed. It is reasonable to infer that the continued kidnapping was for a different, independent objective – obtaining drugs. At the motel in Sylmar, appellant "ordered Avila to call someone to get drugs. . . . [Appellant] continued to press Avila for drugs and asked him whether he had drugs at his house." Thus, "[t]he record in this case supports the trial court's implied finding that the two crimes for which appellant was sentenced involved multiple objectives, were not merely incidental to each other, and were not part of an indivisible course of conduct." (*Id.* at p. 38.)

*Imposition of Upper Term for Kidnapping*

Effective January 1, 2022, Senate Bill No. 567 (S.B. 567) amended section 1170's standards for imposing an upper-term sentence. (Stats. 2021, ch. 731.) As amended, section 1170, subdivision (b)(1) provides that, where a person is convicted of a

14

public offense, "the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in paragraph (2)."  Paragraph (2) provides, "The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial."

Appellant claims the trial court failed to follow S.B. 567's standards for imposing an upper term sentence on the kidnapping conviction.  In justifying its selection of the upper term, the trial court stated: "I have . . . reviewed [appellant's] probation report, and I am finding factors in aggravation exceed those in mitigation pursuant to the California Rules of Court.  [¶]  So as to [the kidnapping conviction], I am going to impose the high term of 8 years."

Appellant's counsel did not object to the trial court's imposition of the upper term.  Therefore, appellant cannot complain on appeal of the trial court's alleged sentencing error.  (See *People v. Scott* (1994) 9 Cal.4th 331, 353 ["the waiver doctrine should apply to claims involving the trial court's failure to properly make . . . its discretionary sentencing choices]; *People v. Velasquez* (2007) 152 Cal.App.4th 1503, 1511 ["by failing to object, Velasquez has forfeited his claim the upper terms are improper because the trial court did not state its reasons for selecting those terms"]; *People v. Kidane* (2021) 60 Cal.App.5th 817, 826.)  Counsel should have been aware of S.B. 567's amendment of section 1170.  Appellant's resentencing occurred

15

on December 7, 2022, almost one year after the effective date of the amendment.

*Alleged Violation of Right to*
*Effective Assistance of Counsel*

Appellant argues that "trial counsel's failure to object [to imposition of the upper term for the kidnapping] constituted ineffective assistance of counsel." "'"[I]n order to demonstrate ineffective assistance of counsel, a defendant must first show counsel's performance was "deficient" because his "representation fell below an objective standard of reasonableness . . . under prevailing professional norms." [Citations.] Second, he must also show prejudice flowing from counsel's performance or lack thereof. [Citations.] Prejudice is shown when there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."'" [Citations.]'" (*In re Hardy* (2007) 41 Cal.4th 977, 1018.)

"[W]hen considering a claim of ineffective assistance of counsel, 'a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed.' [Citation.] A defendant must prove prejudice that is a '"demonstrable reality," not simply speculation.'" (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1241.)

We need not determine whether counsel's performance was deficient. Appellant has failed to carry his burden of proving

16

prejudice as a demonstrable reality.  Appellant's discussion of prejudice consists of a single paragraph:

> Because the evidence in this case did not establish, beyond a reasonable doubt, appellant's identity or the extent of his involvement in the crimes alleged, there is a reasonable probability that, but for counsel's unprofessional errors, the result of the sentencing proceeding would have been different.  [Citations.]  The superior court's intention to keep appellant's punishment the same even after his attempted murder conviction was vacated was a sufficiently egregious error that trial counsel should have objected.  If trial counsel had objected, furthermore, there is a reasonable probability that the result of the proceeding would have been different.  *There were no factors in aggravation that justified the imposition of the upper term on count 13* [simple kidnapping], and the matter should be remanded for resentencing.  (Italics added.)

Contrary to appellant's argument, there were factors in aggravation that justified the imposition of the upper term.  The trial court said it was relying on the aggravating factors listed in the probation report.  In addition to factors concerning appellant's present criminal offenses and violent conduct, the list included the following aggravating factors concerning his criminal record and performance on parole or probation: "[1.] [Appellant] has served prior prison terms.  [2.]  [Appellant] was on parole when the crime was committed.  [3.] [Appellant's] prior performance on probation or parole was unsatisfactory."  There were no mitigating factors.  The probation report noted, "Apparently, [appellant] continues to commit crimes to further the status of his criminal street gang while on parole supervision."  The report concluded, "The circumstances in

17

aggravation outweigh the lack of any in mitigation and, if sentenced to state prison, would warrant imposition of the high-base term."

In determining whether to impose the upper term, "the court may consider the defendant's prior convictions . . . based on a certified record of conviction without submitting the prior convictions to a jury."  (§ 1170, subd. (b)(3).)  "[T]he fact of a prior conviction encompasses a finding that . . . defendant was on probation or parole at the time the crime was committed." (*People v. Pantaleon* (2023) 89 Cal.App.5th 932, 938.)

Had appellant's counsel objected to imposition of the upper term for the kidnapping, it is not reasonably probable that the result would have been different.  To comply with section 1170, subdivision (b)(3), the People could have obtained certified records of appellant's prior felony convictions.  The probation report shows that appellant committed several violations of parole and that on two occasions his probation was revoked.  The trial court could have reasonably relied on appellant's prior felony convictions, prior prison terms, and poor performance on parole/probation to impose the upper term.  "Under California's determinate sentencing system, the existence of a single aggravating circumstance is legally sufficient to make the defendant eligible for the upper term."  (*People v. Black* (2007) 41 Cal.4th 799, 813; see *People v. Lopez* (2022) 78 Cal.App.5th 459, 467 ["unquestionably the trial court may still rely on any single permissible aggravating factor to select an upper term sentence under the newly-revised triad system" of section 1170, subdivision (b)].)

*Disposition*

The judgment entered upon resentencing is affirmed.

18

NOT TO BE PUBLISHED.

YEGAN, J.

We concur:

GILBERT, P. J.

BALTODANO, J.

Hayden A. Zacky, Judge

Superior Court County of Los Angeles

_____

Law Offices of Brad Poore and Brad J. Poore, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill, Supervising Deputy Attorney General, Nima Razfar, Deputy Attorney General, for Plaintiff and Respondent.